**Martin T. PEZELY, et al., Plaintiffs,**

v.

**MERRILL, LYNCH, PIERCE, FENNER & SMITH, et al., Defendants.**

**Civ. No. C87–128G.**

United States District Court,
D. Utah, C.D.

Sept. 30, 1987.

Thomas R. Karrenberg, William P. Schwartz, Hansen & Anderson, Salt Lake City, Utah, for plaintiffs.

Keith E. Taylor, David J. Smith, Parsons, Behle & Latimer, Salt Lake City, Utah, for defendant Merrill Lynch.

Paul Roylance, Bountiful, Utah, pro se.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came before the court on August 24, 1987, pursuant to defendants' Motions to Refer Plaintiff's Federal Securities Claims to Arbitration. Martin T. Pezely, et al., ("the Pezelys") were represented by Thomas R. Karrenberg; Merrill, Lynch, Pierce, Fenner & Smith ("Merrill Lynch") was represented by Keith E. Taylor; and Paul Roylance ("Roylance") appeared pro se. The parties submitted memoranda and presented oral argument, after which the court took the matter under advisement. The court is now fully advised and enters its Memorandum Decision and Order.

## BACKGROUND

On June 10, 1980, the Pezelys entered into a customer agreement with Merrill Lynch concerning the Pezelys' stock account with the company. Under paragraph eleven of the contract the parties agreed that any dispute between them arising out of business conducted under the agreement would be submitted to arbitration. On November 28, 1983, the SEC promulgated a rule providing that any agreement between a broker or dealer and any public customer purporting to bind the customer to the arbitration of future federal securities disputes arising between them was a fraudulent, manipulative, or deceptive act or practice.

17 C.F.R. § 240.15c2–2 (1987) [hereinafter Rule 15c2–2]. It was further provided that a broker or dealer would not be in violation of the rule for contracts entered into before December 28, 1983, if the broker sent a written notice to the customer before December 31, 1984, providing as follows:

> Although you have signed a customer agreement form with FIRM NAME that states that you are required to arbitrate any future dispute or controversy that may arise between us, you are not required to arbitrate any dispute or controversy that arises under the Federal securities laws but instead can resolve any such dispute or controversy through litigation in the courts.

*Id.*

In 1984, Merrill Lynch sent such a written notice to plaintiffs and other account customers. On February 19, 1987, the Pezelys filed this action against Merrill Lynch and Roylance, the account executive at Merrill Lynch in charge of plaintiff's accounts, claiming relief under Section 10 of the Securities Exchange Act of 1934 and Rule 10b–5 because of alleged unauthorized trading of Teledyne securities using the Pezelys' account. The Pezelys also requested relief under six pendent state claims. On March 13, Merrill Lynch moved to refer all the Pezelys' claims against it to arbitration, and also moved to have the federal securities claim stayed, if not referred to arbitration, because of the case of *Shearson/American Express, Inc. v. McMahon*, which was then pending before the United States Supreme Court on the issue of the arbitrability of federal securities claims under Section 10 and Rule 10b–5. An affidavit attaching a copy of the customer agreement was also filed in particular support of Merrill Lynch's contention that in all events the non-securities pendent claims should be governed by the arbitration clause. In opposition plaintiffs alleged that Merrill Lynch had violated Rule 15c2–2 because no notice had been sent to them in compliance with the Rule, and by way of affidavit Martin Pezely stated that he had "not been able to locate" any letter required by Rule 15c2–2 prior to December 31, 1984, and that he did "not

recall receiving" such a letter. On April 13, 1987, Merrill Lynch filed a further affidavit of its employee, Paula Benanti, in which it was asserted that a written notice in fact was sent in both March and December of 1984 to all customers, including plaintiffs, who maintained active or inactive accounts prior to July 1, 1983. On April 28, this court referred all six pendent claims to arbitration, but retained the federal securities claim and refused to stay proceedings related to the claim. The order did not affect any claims against the defendant Roylance, who had filed a motion pro se to refer the Pezelys' pendent claims to arbitration, but had not participated at the hearing.

After this court's order of April 28, 1987, the litigation proceeded normally. Defendant Roylance filed a responsive pleading as to all claims. Merrill Lynch filed its answer as to the securities claim and discovery proceeded, including response by Merrill Lynch to a request for production of documents and a stipulated protective order relative to documents to be produced. On June 8, the United States Supreme Court released its opinion in *Shearson/American Express, Inc. v. McMahon*, — U.S. —, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), holding that federal securities claims under Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 are arbitrable. *Id.* at —, 107 S.Ct. at 2338–43. In view of the *Shearson* decision Merrill Lynch and Roylance filed an additional motion to refer the Pezelys' federal securities claim to arbitration.

## LEGAL ANALYSIS

Merrill Lynch argues that the Pezelys' federal securities claims should now be referred to arbitration.[1] The Pezelys, on the other hand, argue that the federal securities claim can proceed in federal court.[2] Defendant Roylance argues that where a securities brokerage and an account executive or agent of that brokerage are named as defendants, the account executive is entitled to the same benefit of arbitration as the broker even though he did not sign the agreement.[3]

The court finds it unnecessary to deal with any of the arguments asserted by the parties, except those that relate to defendant Roylance, for the reason that in 1984 the parties effectively modified the arbitration agreement to excise federal securities claims. By reason of its April 28, 1987 Order, this court found and ruled that the parties had entered into a binding arbitration agreement in 1980 as to potential future disputes. As to disputes arising under

---

1. Merrill Lynch presented three propositions in support of its position, all of which are contested by plaintiffs: *first,* that it sent the aforesaid written notice merely to comply with Rule 15c2–2, so that the effect of the notice was merely to "suspend," by operation of law, the mandatory arbitration of federal securities claims required under the parties' agreement. It is argued that because *Shearson* reversed the law on which Rule 15c2–2 was based, the Rule is no longer valid, and the suspension of the mandatory arbitration clause as to securities claims is no longer in force; *second,* that Rule 15c2–2 was merely a procedural rule for giving notice to customers, and did not invalidate any previous arbitration agreement; *third,* that the SEC promulgated Rule 15c2–2 to codify its view of the law under existing cases, but that the SEC changed its view in its amicus curiae brief in *Shearson.* Amicus Curiae Brief at 18 n. 13, *Shearson,* — U.S. —, 107 S.Ct. 2332, 96 L.Ed. 2d 185 (1987).

2. Plaintiffs also presented three propositions in support of their position, all of which are disputed by Merrill Lynch: *first,* that the arbitration agreement was not intended or expected to cover federal securities claims at the time the alleged violations occurred. It is argued that the aforesaid notice showed the intent and expectation of Merrill Lynch that the Pezelys could pursue such claims in court; *second,* that the notice constituted an offer to modify the agreement, and that the Pezelys accepted the modification by opposing arbitration of the federal securities claim; *third,* Merrill Lynch is estopped from now claiming that the contract requires arbitration of federal securities claims because Merrill Lynch's notice induced the Pezelys to pursue the federal securities claim in court and to resist Merrill Lynch's attempt to compel arbitration, all to the Pezelys' financial detriment.

3. The Pezelys in response argue that they cannot be compelled to arbitrate disputes with Roylance because Roylance was not a party to the arbitration agreement, and that in all events defendant Roylance waived any right to refer claims to arbitration by his actions in entering a general appearance and proceeding with the litigation.

the Federal securities laws, the court effectively ruled that in 1984 the parties had removed such from the purview of the arbitration agreement. Both the notice which was sent and the internal memorandum of Merrill Lynch which was submitted to the court manifest an intention on the part of Merrill Lynch to effectuate a modification, or to release, excuse or abandon insistence upon arbitration of Federal securities claims at that time.[4] It was and is clear to the court that even though plaintiffs couldn't "recall" or "locate" the Merrill Lynch notice which related to litigation of securities claims in spite of the arbitration clause, such a notice in fact was sent and presumably was received and accepted.[5] Accordingly, it was and is apparent from the record that the arbitration agreement had been modified by the parties to excise Federal securities claims. Also, in view of the proceedings subsequent to the April 28, 1987 Order it would be more equitable to proceed with the ongoing litigation as to the securities count than to arbitrate that matter. Consequently, defendant Merrill Lynch's motion to refer plaintiff's federal securities claim to arbitration is denied.

As to the defendant Roylance, the court rules that the arbitrability of claims against him should be governed by the same principles as apply to Merrill Lynch even though he was not a party to the contract.[6] Also, the conduct and participation of Roylance in the litigation has been so minimal that it cannot be said that he waived his right to have the pendent claims arbitrated.[7] Accordingly, the pendent claims against Roylance are referred to arbitration to be processed along with the similar claims asserted against Merrill Lynch, and the federal securities claim is retained for litigation in this court. Consequently, the motion of defendant Roylance to refer the pendent claims to arbitration is granted and the motion to refer the federal securities claim to arbitration is denied.

This Memorandum Decision and Order will suffice as the court's final action on both motions; no further Order need be prepared by counsel.

---

**4.** Merrill Lynch's internal memorandum prepared in connection with sending the written notice to customers stated that "SEC Rule 15c2–2" required them "by December 31, 1984, to notify all existing customers who have already signed agreements with arbitration clauses that are not modified and who continue to have active accounts of the *modification to the arbitration clause.*" (Emphasis added.)

**5.** Under paragraph 10 of the customer agreement between Merrill Lynch and the Pezelys, "[c]ommunications ... sent to the [Pezelys] ... by mail ... shall be *deemed given to [them] personally,* whether actually received or not." (Emphasis added.) Further, the Pezelys' acceptance is implied from the fact that they dealt with Merrill Lynch in a broker-customer fashion after receipt of the notice. Between April and September 1984, activity in the Pezelys'

account took place in connection with Teledyne securities and Mr. Pezely contacted Roylance's supervisor to discuss the Teledyne trade.

**6.** *See Shahmirzadi v. Smith Barney, Harris Upham & Co.,* 636 F.Supp. 49, 55 (D.D.C.1985) (in "suits against the individual [agent] of [a] brokerage [firm], ... the individual defendant [can] be made a party to the arbitration proceedings despite the fact that he was not a party to the agreement"); *Vic Potamkin Chevrolet, Inc. v. Bloom,* 386 So.2d 286 (Fla.Dist.Ct.App. 1980); *Paine, Webber, Jackson & Curtis, Inc. v. McNeal,* 143 Ga.App. 579, 239 S.E.2d 401, 404 (1977).

**7.** *See Reid Burton Constr. Co. v. Carpenters Dist. Council of So. Colo.,* 614 F.2d 698, 702 (10th Cir.1980).