Hassan and Farideh
SHAHMIRZADI, Plaintiffs,

v.

SMITH BARNEY, HARRIS UPHAM &
COMPANY, INC., and George
Dow, Defendants.

Civ. A. No. 84–280.

United States District Court,
District of Columbia.

Dec. 10, 1985.

Jack L. Gould, Fairfax, Va., for plaintiffs.

James H. Schropp, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

STANLEY S. HARRIS, District Judge.

This matter is before the Court on the motion of the defendants Smith Barney, Harris Upham & Company, Inc., and George Dow "To Dismiss, To Compel Arbitration And To Strike Claim For Punitive Damages." The defendants seek dismissal of all claims for failure to state a cause of action, dismissal of all claims for statutory or common law fraud for failure to state with sufficient particularity the circumstances constituting the alleged fraud, dismissal of the claims under the antifraud provisions of the federal securities laws for failure to state a claim, and dismissal of all claims under the constitution or rules of the New York Stock Exchange (NYSE) or the National Association of Securities Dealers, Inc. (NASD) on grounds that those private industry rules do not create a private cause of action. The defendants also request that all pendent common law claims be referred to arbitration, and that the plaintiffs' claims for punitive damages be stricken.

The Court denies the defendants' motion to dismiss for failure to state a claim, for failure to plead fraud and churning (*i.e.,* excessive trading to generate commission income) with particularity, and failure to state a claim under the federal securities laws. The Court grants the defendants' motion to sever all claims not arising under the federal securities laws and refer them to arbitration, the defendants' motion to dismiss all claims arising under the rules of the NYSE or the NASD for failure to state a claim upon which relief may be granted, and the defendants' motion to strike the plaintiffs' claims for punitive damages.

### Background

Plaintiffs, Mr. and Mrs. Shahmirzadi, emigrated from Iran with their minor child in 1978, being able to bring with them only

their life savings. On the advice of their accountant, plaintiffs invested $100,000 in tax-free municipal bonds, using the individual defendant, George Dow, as their broker. Dow was then an account executive for the brokerage firm of Drexel, Burnham & Lambert, Inc., in Washington, D.C. Dow later joined the corporate defendant, Smith Barney, another brokerage firm, taking with him the plaintiffs' municipal bond account.

The plaintiffs allege that after Dow moved to Smith Barney, he induced them to invest an additional $100,000, obtained through a mortgage on their home, in securities and options. Dow promised them low risk and high return, perhaps as much as 45%, on their investment. Dow was aware that the plaintiffs had no experience in trading either securities or options. In 1981, the plaintiffs turned the money over to Dow, asking him to invest it conservatively. Dow instead invested it heavily in options and in securities purchased on margin.

By January 1983, plaintiffs' non-bond portfolio had fallen to a value of $15,750. Plaintiffs instructed Dow to take more care and to seek advice from his superiors before trading further in their account. Dow indicated that he would follow these instructions; plaintiffs allege that he did not. When the value of their portfolio continued to decline, plaintiffs inquired about their account, but were told that the statements they had received were no longer current.

In October 1983, plaintiffs met with Dow's superior at Smith Barney and asked for an investigation of Dow's handling of their account. Plaintiffs were told that an investigation would be undertaken and that they would be contacted within three days. The plaintiffs were never contacted, and they believe that Dow's conduct never was investigated. The value of the plaintiffs' portfolio continued to decline, and by November 1983 its value had reached only $248.

In their amended complaint, the plaintiffs advance three counts for relief. All three of these counts are grounded upon violations of "the Rules and/or Constitution of the New York Stock Exchange and/or the National Association of Securities Dealers, Inc., the Securities Act of 1933 and the Securities Exchange Act of 1934, the rules and regulations of the Securities and Exchange Commission, and the fiduciary duty the Defendants owed the Plaintiffs."

Count I alleges fraud on the plaintiffs by defendant Dow, which is chargeable to the defendant Smith Barney as Dow's employer. In Count II, the plaintiffs seek redress for the false or misleading statements made to them by Dow, and the omissions of material fact with respect to the risks of trading securities and options. Count III concerns the alleged churning of the plaintiffs' account based on the accrual within 26 months of $39,965 in commissions. The plaintiffs ask for rescission of the contract, compensatory damages, punitive damages, costs, and attorney's fees.

### A. Failure To State A Claim Upon Which Relief Can Be Granted

In all three counts of their complaint, the plaintiffs' ground their claim for relief on violations of, *inter alia,* unspecified provisions of the "Rules and/or Constitution of the NYSE and/or the NASD...." The defendants have moved to dismiss this part of plaintiffs' claims on grounds that no private right of action exists under those rules. The Court finds that no private right of action exists, and grants the defendants' motion to dismiss all claims for relief based on those provisions.

A private right of action normally may be implied only where Congress intended to create such a cause of action. It is a question of statutory construction. *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2488–89, 61 L.Ed.2d 82 (1979). The court in *Touche Ross* determined Congress' intent by examining the language of the statute, the legislative history of the

statute, and the overall statutory scheme. *Touche Ross*, at 568–73, 99 S.Ct. at 2485–88.

■ The NYSE and NASD rules at issue here, however, were not directly enacted by Congress. They were adopted by the NYSE and the NASD acting on the authority of Congress. Therefore, a two-step inquiry is necessary to determine whether there was legislative intent to create a private cause of action: (1) whether Congress intended to delegate authority to establish rules implying a private right of action, and (2) whether the rules were drafted such that a private right of action thereunder legitimately may be implied. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 679 (9th Cir.1980). *See also Walck v. American Stock Exchange*, 687 F.2d 778, 788 (3d Cir. 1982), *cert. denied*, 461 U.S. 942, 103 S.Ct. 2118, 77 L.Ed.2d 1300 (1983).

■ The Court finds that Congress did not intend to delegate the authority to create private causes of action, and therefore does not reach the issue of whether any particular exchange or association rule indicates an intent to create a private cause of action.[1]

Prior to *Touche Ross* and *Transamerica,* some courts had implied causes of action from NYSE rules through the conjunction of §§ 6(b) and 27 of the Securities Exchange Act (SEA), 15 U.S.C. §§ 78f(b), 78aa (1981). Section 6(b) requires exchanges to develop rules promoting "just and equitable principles of trade." The duties created by these rules were held privately enforceable through § 27. Section 27 provides that any action may be "brought to enforce any liability or duty created by this chapter or the rules or regulations thereunder." *See, e.g., Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 410 F.2d 135 (7th Cir.), *cert. denied*, 396 U.S. 838, 90 S.Ct. 98, 24 L.Ed.2d 88 (1969).

Similarly, a private cause of action could be implied from the NASD rules through the conjunction of §§ 15A(b)(6) and 27 of the SEA, 15 U.S.C. §§ 78o–3(b)(6), 78aa (1981). Section 15A(b)(6) requires a stock exchange to adopt disciplinary rules. Those rules would then be enforceable through § 27.

The *Touche Ross* Court rejected the idea that § 27 of the SEA created a private cause of action. The Court noted:

> Section 27 grants jurisdiction to the federal courts and provides for venue and service of process. It creates no cause of action of its own force and effect; it imposes no liabilities. The source of plaintiff's rights must be found, if at all, in the substantive provisions of the 1934 Act which they seek to enforce, not in the jurisdictional provision.

*Touche Ross*, 442 U.S. at 577, 99 S.Ct. at 2490.

As the duties created by §§ 6(b) and 15A(b)(6) no longer can be enforced through § 27, the cause of action would have to be implied from §§ 6(b) and 15A(b)(6) standing alone. Sections 6(b) and 15A(b)(6) do not, by themselves, create a private cause of action. The *Touche Ross* Court limited statutes from which private causes of action could be implied to those statutes which "prohibited certain conduct or create federal rights in favor of private parties." *Id.* at 569, 99 S.Ct. at 2485. The *Jablon* court had found that neither § 6(b) nor § 15A(b)(6) conferred rights on private parties or proscribed conduct as unlawful. *Jablon,* 614 F.2d at 680–81. As no intent to delegate the authority to create private rights of action can be implied from the statutes authorizing NYSE and NASD rules, no private right of action can be conferred by the rules themselves.

In addition to the lack of language suggesting Congressional intent to delegate authority, other indications of legislative intent also suggest that Congress did not intend to extend such authority. There is no mention of private causes of action in the legislative history, and the statutory

---

1. This disposes of the plaintiffs' argument that each NYSE and NASD rule must be considered individually. If Congress did not delegate the authority to the exchange or the association initially, then none of their rules may confer a private cause of action on the plaintiffs.

scheme of the SEA suggests that private causes of action were not to be implied. Several provisions in the SEA explicitly provide for private causes of action, raising the inference that those not containing such provisions were not intended to contain them. Also, the statutory scheme contemplates self-regulation and enforcement of the rules by exchanges and associations, suggesting that Congress intended such self-regulation to be the only means of enforcement. *See Juster v. Rothschild, Unterberg, Towbin,* 554 F.Supp. 331, 333 (S.D.N.Y.1983); *Colman v. D.H. Blair & Co.,* 521 F.Supp. 646, 654 (S.D.N.Y.1981). Therefore, given that legislative intent clearly requires that no private cause of action be implied, any claims for relief based on the rules are dismissed.

### B. *Insufficiency of Pleading*

The defendants have advanced four separate arguments seeking to dismiss various elements of the complaint for insufficient pleading. First, the defendants argue that the entire complaint fails to satisfy Federal Rule of Civil Procedure 8(a) which requires, *inter alia,* "a short and plain statement of the claim showing the pleader is entitled to relief." The Court finds that the plaintiff adequately has demonstrated some entitlement to relief if the facts alleged are proven true, and therefore the Court denies the motion to dismiss for failure to plead a cause of action.

The other three contentions require more discussion. The defendants argue that all allegations of fraud in the complaint are insufficiently pled under the stricter pleading standards of Federal Rule of Civil Procedure 9(b). The defendants further suggest that the plaintiffs have only pled dissatisfaction with their broker's performance, which fails to establish a cause of action under the federal securities antifraud provisions. Lastly, the defendants contend that the plaintiffs have failed to allege sufficient facts to support a claim for churning.

Although the plaintiffs' counsel have been very general in drafting their plead-

ings, the Court still finds the pleadings sufficient to withstand the motion to dismiss.

### 1. *Fraud*

■ Federal Rule of Civil Procedure 9(b) sets the standard for pleading fraud. Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This rule applies not only to common law fraud, but also to fraud claims under the federal securities laws. *See, e.g., Ross v. A.H. Robins Co.,* 607 F.2d 545, 557–59 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). In the context of the federal securities laws, that rule has been interpreted to mean that "[a] plaintiff alleging fraud in a securities transaction must specifically allege the acts or omissions upon which the claim rests." *Id.*

That rule does, however, have to be read in conjunction with the liberal general pleading standard of Rule 8 of the Federal Rules of Civil Procedure. Those two rules, read together, lead to the conclusion that "the obligation to plead circumstance in Rule 9 should not be treated as requiring allegations of facts in the pleadings." *Securities & Exchange Commission v. Tiffany Industries, Inc.,* 535 F.Supp. 1160, 1166 (E.D.Mo.1982), citing 5 WRIGHT & MILLER, *Federal Practice and Procedure,* § 1298, p. 409.

■ The Court finds the plaintiffs' allegations of fraud sufficient to meet this pleading standard. The plaintiffs allege three instances of intentional misrepresentation which induced them to place and keep their account with defendant Dow, and therefore with defendant Smith Barney. The plaintiffs allege that they initially were induced to invest in securities and options by the representations of defendant Dow that the investment would be safe and extremely profitable. Dow was aware, according to the plaintiffs, that the plaintiffs knew little or nothing about investing in securities or options. Once the plaintiffs observed the precipitous decline in the val-

ue of their holdings, they sought twice, unsuccessfully, to restrict Dow's discretion, first by asking him to consult his immediate superior before trading in their account, and second, by going directly to his superior and asking him to investigate Dow's handling of their account. On both occasions, plaintiffs allege that they were assured that appropriate action would be taken, but that action was not taken.

These allegations sufficiently satisfy the standard for pleading fraud set forth in Rule 9(b). In *Todd v. Oppenheimer & Co.*, 78 F.R.D. 415, 420–21 (S.D.N.Y.1978), the court required that the time, place, manner, content, and speaker of particular statements be pleaded, in addition to stating how they misled the plaintiff and what the defendants obtained as a consequence of the fraud. The plaintiffs have provided that information in this case. The statements in question are three distinct representations made to the plaintiffs, two by Dow, and one by Dow's unnamed superior, which lulled the plaintiffs into placing their money in Dow's hands and allowing it to remain there, to the benefit of both Dow and Dow's employer, Smith Barney. The plaintiffs need not plead scienter specifically; under Rule 9(b), scienter may be alleged generally in the complaint.

The cases cited by the defendant to support dismissal of the allegations of fraud are distinguishable from the situation at hand. *See, e.g., Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir.1972) (holding a complaint insufficient which merely tracked the language of the statute without alleging any facts); *Shemtob v. Sherson, Hammill & Co.*, 448 F.2d 442 (2d Cir.1971) (dismissing a complaint which alleged only a breach of contract from which no inference of scienter could be drawn); *Vetter v. Shearson, Hayden, Stone, Inc.*, 481 F.Supp. 64 (S.D.N.Y.1979) (complaint described actions as unauthorized or perilous without alleging how those transactions were fraudulent).

## 2. *Federal Securities Law Antifraud Provisions*

■ The plaintiffs' allegations of fraud also are sufficient to state a cause of action under the federal securities law antifraud provisions. The defendants maintain that the plaintiffs' claims are essentially a reflection of dissatisfaction with the performance of their broker, which is not actionable under the federal securities laws. The Court finds that the plaintiffs' allegations go beyond mere dissatisfaction, or the other allegations found insufficient in the cases cited by defendants, such as breach of contract, *Bowman v. Hartig*, 334 F.Supp. 1323, 1328 (S.D.N.Y.1971); poor business judgment by the broker, *Carroll v. Bear, Stearns & Co.*, 416 F.Supp. 998 (S.D.N.Y.1976); or a "recommendation that [went] awry," *Van Alen v. Dominick & Dominick, Inc.*, 441 F.Supp. 389, 400 (S.D.N.Y.1976), *aff'd*, 560 F.2d 547 (2d Cir.1977). Therefore, the Court denies the defendants' motion to dismiss for failure to allege facts to support a claim under the antifraud provisions of the federal securities laws.

## 3. *Churning*

The defendants' last argument for dismissal based on the insufficiency of the plaintiffs' pleadings is a contention that the plaintiffs failed to allege sufficient facts to maintain a claim for churning of their account. The Court finds that the plaintiffs have alleged sufficient facts to maintain a churning claim, and denies that portion of the defendants' motion.

Under *Newburger, Loeb & Co. v. Gross*, 563 F.2d 1057 (2d Cir.1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978), a plaintiff must show that "the dealer effectively exercised control over trading in the account and manipulated the account to his benefit." *Id.* at 1069. The Court concludes that the plaintiffs have adequately alleged that Dow had control over the account. The plaintiffs clearly took no active role in the choice of investments, and when they did try to limit Dow's discretion, unsuccessfully, they recommended that Dow consult his superiors, not them.

■ The Court also finds that the plaintiffs have alleged sufficient facts to

show that Dow "manipulated the account to his benefit." In order to show such manipulation, the plaintiff must allege facts sufficient to show either the turnover ratio of the account or the percentage of the account paid in commissions. *Baselski v. Paine, Webber, Jackson & Curtis, Inc.,* 514 F.Supp. 535, 541 (N.D.Ill.1981). The plaintiffs allege that in the space of 26 months, from August 1981 to November 1983, Dow generated from the plaintiffs' account $39,965 in commissions. This surely is sufficient information to suggest that a high percentage of the plaintiffs' account was eroded by commissions. This clear inference of churning differentiates the plaintiffs' case from situations in which a churning claim has been dismissed on the pleadings. *See, e.g., Vetter,* 481 F.Supp. at 66 (dismissing a churning count because it was based on conclusory allegations of churning); *Carroll,* 416 F.Supp. at 1001 (dismissing a conclusory allegation of churning where the commissions generated equaled 1% of the portfolio value).

### C. *Arbitrable Claims*

In addition to taking the positions discussed above, the defendants also move to dismiss all pendent common law claims, or in the alternative, to stay those claims and refer them to arbitration. The pendent claims cannot be dismissed because the Court has declined to dismiss the underlying federal claims. However, the Court finds that the common law claims properly are severed and referred to arbitration.

When the plaintiffs opened their account at Smith Barney, they executed a "Customer's Agreement" which contained the following clause:

> Any controversy arising out of or relating to my account ... shall be settled by arbitration in accordance with the rules, regulations and procedures then in effect of the New York Stock Exchange, Inc., the AMEX or National Association of Securities Dealers, Inc., as I may elect.

The federal securities law claims involved in this case are clearly exempt from arbitration. The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (1976), provides for the exclusive jurisdiction of federal courts over federal securities claims. *See, e.g., Wilko v. Swan,* 346 U.S. 427, 428, 74 S.Ct. 182, 183, 98 L.Ed. 168 (1953); *Liskey v. Oppenheimer & Co.,* 717 F.2d 314, 315 (6th Cir. 1983). Given the presence of nonarbitrable claims, the continuing effect of the arbitration agreement becomes an issue. The Court finds the arbitration agreement to be still effective, and orders the common law claims severed and referred to arbitration. Trial of the federal securities law issues will be stayed pending the outcome of the arbitration.

■ The plaintiffs advance three arguments for the proposition that the pendent common law claims should not be submitted to arbitration. Initially, the plaintiffs argue that they cannot properly be compelled to arbitrate the claims against defendant Dow because Dow could not be compelled to arbitrate disputes between himself and plaintiffs. That lack of reciprocity, they allege, relieves them of the duty to arbitrate their claims against Dow.

State courts which have addressed the question of suits against the individual agents of brokerage firms have allowed the individual defendant to be made a party to the arbitration proceedings despite the fact that he was not a party to the agreement. *See, e.g., Vic Potamkin Chevrolet, Inc. v. Bloom,* 386 So.2d 286 (Fla.Dist.Ct.App. 1980) (where arbitration clause applied to "any controversy or claim arising out of, or relating to this agreement," the scope of that clause was broad enough to include within it individuals within the respondeat superior doctrine even though they were not signatories to the agreement); *Paine, Webber, Jackson & Curtis, Inc. v. McNeal,* 143 Ga.App. 579, 239 S.E.2d 401, 404 (1977) (defendant account representative was entitled to share with defendant firm the benefit of the arbitration agreement); *Starr v. O'Rourke,* 5 Misc.2d 646, 159 N.Y.S.2d 60, 61 (1957) (individual employee is joint tortfeasor with the firm, so despite jurisdictional technicalities, a suit against both should

be entertained in the forum to which one has a right to resort).

■ Secondly, the plaintiffs contend that the arbitration agreement should not be enforced because arbitrators cannot award punitive damages, and they allege that they did not knowingly waive their right to punitive damages. The Court finds that the signing by the plaintiffs of the Customer's Agreement, which was governed by New York law and included an arbitration clause, was a contractual waiver of the right to punitive damages. *Baselski*, 514 F.Supp. at 543.

■ Finally, the plaintiffs argue that no part of the complaint should be submitted to arbitration in order to preserve the exclusive jurisdiction of the federal courts over federal securities law claims. This Court finds protection of exclusive jurisdiction to be an insufficient reason to override the agreement of the parties to arbitrate claims. *See, Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985). *See also, Liskey*, 717 F.2d at 320; *Dickinson v. Heinold Securities, Inc.*, 661 F.2d 638, 646 (7th Cir.1981). The federal policy favoring arbitration is very strong. *See*, Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (1976).

Therefore, these common law claims are subject to arbitration, and trial on the federal securities law issues will be stayed pending the resolution of the arbitration. The Supreme Court has stated that:

> [C]ourts may directly and effectively protect federal interests by determining the preclusive effect to be given to an arbitration proceeding. Since preclusion doctrine comfortably plays this role, it follows that neither a stay of the arbitration proceedings, nor a refusal to compel arbitration of state claims, is *required* in order to assure that a precedent arbitration does not impede a subsequent federal-court action.

*Dean Witter*, 105 S.Ct. at 1243.

### D. *Punitive Damages*

The defendants argue that the plaintiffs' claim for punitive damages should be stricken because the plaintiffs have not stated a cause of action which would support the award of punitive damages. The Court finds that plaintiffs are not entitled to punitive damages, and therefore strikes the claim for such damages.

■ The plaintiffs clearly cannot recover punitive damages under any federal securities law claim. Punitive damages are not available for such claims under either the Securities Act of 1933, *Globus v. Law Research Service, Inc.*, 418 F.2d 1276, 1283–87 (2d Cir.1969), *cert. denied*, 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970); or the Securities Exchange Act of 1934, *Carras v. Burns*, 516 F.2d 251, 259–60 (4th Cir.1975).

Furthermore, the plaintiffs waived their rights to punitive damages under any of the remaining common law claims. As decided above, all such claims are subject to arbitration. By the plaintiffs' own admission, "[b]oth Smith-Barney's Customer's Agreement ... and the Customer's Option Account Form and Agreement ... executed by the Plaintiffs specifically provide that the agreements and transactions shall be governed by the laws of the State of New York." *Memorandum of Points and Authorities in Opposition to Defendants' Motion To Dismiss, To Compel Arbitration And To Strike Claim for Punitive Damages*, p. 13 fn. Under the laws of New York, an arbitrator has no power to award punitive damages. *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354, 386 N.Y.S.2d 831, 832, 353 N.E.2d 793, 794 (1976). When the plaintiffs executed the Customer's Agreement, they contractually waived their right to punitive damages by agreeing to be governed by arbitration and New York law. *Baselski*, 514 F.Supp. at 543. Therefore, the plaintiffs are not entitled to punitive damages on any claim.

For the foregoing reasons, it hereby is

ORDERED, that the defendants' motion to dismiss all claims under the constitution and/or rules of the New York Stock Exchange or the National Association of Secu-

rities Dealers is granted. It hereby further is

ORDERED, that the defendants' motion to dismiss all claims for failure to plead a cause of action is denied. It hereby further is

ORDERED, that the defendants' motion to dismiss any claims for fraud is denied. It hereby further is

ORDERED, that the defendants' motion to dismiss all claims under the antifraud provisions of the federal securities laws is denied. It hereby further is

ORDERED, that the defendants' motion to dismiss any pendent common law claims is denied. The defendants' motion to sever all pendent common law claims, and have them subject to arbitration, is granted. It hereby is

ORDERED, that the defendants' motion to strike the plaintiffs' claim for punitive damages is granted.

SO ORDERED.