Arman BRICK, Plaintiff,

v.

J.C. BRADFORD & COMPANY, INC.,
et al., Defendants.

Civ. A. No. 86–2647–OG.

United States District Court,
District of Columbia.

Oct. 16, 1987.

Alexander J. Pires, Jr. and Jeffrey A. Knishkowy, Washington, D.C., for plaintiff.

Michael Nussbaum, Kate A. Martin, and Carl S. Kravitz, Washington, D.C., for defendants J.C. Bradford & Co. and Preston Mulford.

Brett L. Antonides, Washington, D.C., for defendant Jeffrey Seckler.

## MEMORANDUM

GASCH, District Judge.

This case arises from facts that are distressingly common in the halls and on the trading floors of Wall Street. In January and February 1986, plaintiff made several large purchases of stock pursuant to a public offering in the shares of Advanced Tobacco Products, Inc. ("ATP"). The purchases were allegedly induced by representations by defendants that ATP would soon be a target in the take-over epidemic that has engulfed Wall Street. To plaintiff's disappointment, ATP was never courted, and the value of the corporation's stock

plummeted. This case is the debris that remains from the crash of ATP stock.[1]

Plaintiff's complaint alleged four counts of violations of federal securities laws and three counts of state common law claims. In an order dated June 9, 1987, the Court dismissed three of plaintiff's federal securities law claims, leaving a single federal claim under section 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j (1982), and Rule 10b–5 promulgated thereunder. Also remaining are common law claims of breach of fiduciary duty, fraud, and negligent misrepresentation. Subsequent to that order defendants J.C. Bradford & Co., Mulford, Snaman, and Seckler filed motions to compel arbitration of all the claims against them.[2] In addition, defendant Mulford repeated his motion to dismiss. Plaintiff opposed all the motions to compel arbitration with one small exception and urged the Court to stay any arbitration that is ordered.

## DEFENDANT MULFORD'S MOTION TO DISMISS

In its June 9, 1987, Order, the Court specifically addressed defendant Bradford's motion to dismiss on grounds that plaintiff was *in pari delicto* with the defendants. The Court rejected this argument and concluded that "plaintiff had pled adequately a claim of securities fraud and market manipulation against all defendants." June 9 Order, at 3. Defendant

Mulford has once against moved to dismiss plaintiff's section 10(b) claim against him on the ground that plaintiff has failed to plead sufficient facts to state a claim.

The language of the Court's Order of June 9 plainly states that plaintiff had pled sufficient facts to allege a section 10(b) claim against all defendants. Defendant Mulford, however, apparently believes that his motion was not denied because the order did not specifically address him by name. Mulford is clearly incorrect, and his motion is again denied.

## THE MOTIONS TO COMPEL ARBITRATION

Defendants' motion to compel arbitration is based upon the Federal Arbitration Act, 9 U.S.C. §§ 1–14 (1982) ("Arbitration Act"). Sections 2 and 3 of the Arbitration Act provide for enforcement by the federal courts of private agreements to arbitrate disputes arising out of commercial contracts.[3] Commenting on the purpose of the Arbitration Act, the Supreme Court has stated that Congress intended to "revers[e] centuries of judicial hostility to arbitration agreements ... [and] place arbitration agreements 'upon the same footing as other contracts.'" *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 510–11, 94 S.Ct. 2449, 2453, 41 L.Ed.2d 270 (1974) (quoting H.R. Rep. No. 96, 68th Cong., 1st Sess. 1, 2 (1924)); *see Shearson/American Express, Inc. v. McMahon*, —— U.S. ——, 107 S.Ct.

1. Plaintiff has moved the Court to certify as a class all those persons who purchased or sold ATP stock between October 1985 and March 1986. That motion is pending.

2. This motion was originally filed by defendants J.C. Bradford & Co. and Mulford on November 18, 1986 as an alternative to a motion to dismiss. The Court stayed consideration of the motion to compel arbitration pending resolution of the motions to dismiss.

 It should also be noted that defendants Gardere, Wright, Advanced Tobacco Products ("ATP"), and Schneider, Bernet & Hickman are not parties to the motions to compel arbitration.

3. Section 2 provides:

 A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part

thereof, of an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Section 3 provides:

 If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

2332, 2337, 96 L.Ed.2d 185 (1987) (quoting *Scherk*). Extrapolating from the language of the Arbitration Act and the legislative history, numerous federal courts have noted that there is a strong federal policy favoring enforcement of arbitration agreements. *McMahon*, 107 S.Ct. at 2337; *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 3355, 87 L.Ed.2d 444 (1985); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 25, 103 S.Ct. 927, 942, 74 L.Ed.2d 765 (1983); *National Foundation for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 774 (D.C.Cir.1987).

Implementing this policy, many federal courts have determined that arbitration agreements should be liberally construed and any ambiguities as to the scope of such agreements should be resolved in favor of arbitration. *E.g., Bhatia v. Johnston*, 818 F.2d 418, 421 (5th Cir.1987); *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1189 (9th Cir.1986); *Shahmirzadi v. Smith Barney, Harris Upham & Co.*, 636 F.Supp. 49, 56 (D.D.C.1985) (Harris, J.); *Shotto v. Laub*, 632 F.Supp. 516, 520 (D.Md.1986); *Brown v. Dean Witter Reynolds, Inc.*, 601 F.Supp. 641, 644 (S.D.Fla. 1985). Indeed, the Supreme Court has incorporated this deference into its application of general contract law principles to arbitration agreements. *See Mitsubishi*, 105 S.Ct. at 3354 ("as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability"); *see also Finkle & Ross v. A.G. Becker Paribas, Inc.*, 622 F.Supp. 1505, 1510 (S.D.N.Y.1985) (citing *Mitsubishi*).

Recently, however, the United States Court of Appeals for the District of Columbia Circuit adopted a more restrained interpretation of the federal arbitration policy. In *National Foundation for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772 (D.C. Cir.1987), Judge Mikva, writing for the court, commented that the Arbitration Act is an expression of Congress' intention to have the federal courts enforce arbitration agreements as they would enforce any other contract. According to Judge Mikva, the Act is not an expression of a preference for arbitration as a dispute resolution mechanism. *Id.* at 774. Thus, he concluded that whether a defendant has waived his right to arbitration should be determined according to contract law principles of waiver and ignoring that arbitration is the substance of the right. *Id.*

In resolving the issues underlying the instant motion to compel arbitration, the Court is mindful of Judge Mikva's restrained reading of the Arbitration Act.

### Is the Arbitration Clause in the Customer Agreement Valid?

In cases like the one before the Court, plaintiffs have frequently challenged the validity of the arbitration clause sought to be enforced by defendant brokerage firms and brokers. These challenges are based on section 2 of the Arbitration Act which allows the federal courts to refuse to enforce an arbitration agreement "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1982). Plaintiffs commonly offer two arguments to support their challenge.

First, plaintiffs often contend that they were fraudulently induced to sign the customer agreement. *See, e.g., Bhatia*, 818 F.2d at 421–22; *Driscoll v. Smith Barney, Harris, Upham & Co.*, 815 F.2d 655, 659 (11th Cir.1987). Plaintiff makes no such claim; indeed, in his opposition to the instant motion, plaintiff admits that he was *not* fraudulently induced to execute the Customer Agreement.[4] Nevertheless, such a claim would be fruitless. The Supreme Court held long ago that claims of fraud in the inducement of the entire agreement are to be decided by the arbitrator. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967). The district court may properly consider only claims that the

---

4. Plaintiff's only claim regarding his execution of the arbitration clause is that "it is clear that [he] never knowingly agreed to arbitrate his federal securities claims." Plaintiff's Memorandum in Opposition at 5 n. 5.

customer was fraudulently induced to agree to the arbitration clause specifically. *Id.* Again, Plaintiff makes no such claim.

The second argument often propounded by plaintiffs who challenge arbitration clauses is that such clauses are unconscionable or constitute contracts of adhesion. *See, e.g., Nesslage v. York Securities, Inc.,* 823 F.2d 231, 234 (8th Cir.1987); *Driscoll,* 815 F.2d at 658–59; *Surman v. Merrill Lynch, Pierce, Fenner & Smith,* 733 F.2d 59, 61 n. 2 (8th Cir.1984); *Farkar Co. v. R.A. Hanson Disc, Ltd.,* 583 F.2d 68, 71–72 (2d Cir.1978); *Roberts v. Smith Barney, Harris Upham & Co.,* 653 F.Supp. 406, 416–17 (D.Mass.1986); *Shotto,* 632 F.Supp. at 522; *Finkle & Ross,* 622 F.Supp. at 1511. Courts that have considered the argument have uniformly held that "[t]here is certainly nothing inherently unfair about the arbitration clauses, and they are therefore valid and enforceable," *Surman,* 733 F.2d at 61 n. 2; *see, e.g., Shotto,* 632 F.Supp. at 522; *Finkle & Ross,* 622 F.Supp. at 1512, and that "there is nothing unconscionable per se in agreements to arbitrate securities or commodities disputes." [5] *Roberts,* 653 F.Supp. at 418. Apparently agreeing, the Supreme Court recently rejected an argument that arbitration clauses are not enforceable because they are not freely negotiated. *McMahon,* 107 S.Ct. at 2339.

The Court is persuaded by the prevailing view in the federal courts that an agreement between a securities brokerage firm and its customer to arbitrate disputes arising from their relationship is not unconscionable per se. In this case, there are no facts that suggest that the particular arbitration clause in the Agreement between the parties is unconscionable. The effect of the clause in this case is at least as favorable to the customer, Mr. Brick, as those examined in the cases cited *supra.*

Moreover, plaintiff does not allege any fraudulent conduct by defendants in connection with execution of the arbitration clause or Customer Agreement.

### Are Plaintiff's Section 10(b) Claims within the Scope of the Arbitration Clause?

The next task for the Court is to determine if the parties agreed to arbitrate claims under section 10(b). *Mitsubishi,* 105 S.Ct. at 3354. The Supreme Court has instructed that "the parties' intentions control, but those intentions are generously construed as to issues of arbitrability" and that "we are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution." *Id.* However, as discussed earlier, our Court of Appeals has refused to understand the Supreme Court to mean that application of principles of contract law should be skewed because the object of that application is an arbitration clause. *National Foundation,* 821 F.2d at 774. Thus, in the present case the Court maps the bounds of the arbitration clause applying general principles of contract interpretation as they would be applied in any other contractual dispute.

The arbitration clause of the Customer Agreement provides:

16. Arbitration: *The following agreement to arbitrate does not apply to any controversy with a public customer for which a remedy may exist pursuant to any expressed or implied right of action under the federal securities laws:* the undersigned agrees, and ... you agree, that except that as inconsistent with the foregoing sentence, all controversies which may arise between us con-

---

**5.** Although the definitions of unconscionability are as varied as the circumstances under which the doctrine is invoked, several courts cited here adopted the definition offered by the United States Court of Appeals for the District of Columbia in *Williams v. Walker-Thomas Furniture Co.,* 350 F.2d 445 (D.C.Cir.1965): "Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are *unreasonably favorable* to the other party." *Id.* at 449 (emphasis added). Applying this test, these courts have held that arbitration clauses do not "unreasonably favor[ ] one party over the other." *Shotto,* 632 F.Supp. at 522 & n. 9; *see Driscoll,* 815 F.2d at 658–59; *Roberts,* 653 F.Supp. at 416–17; *Finkle & Ross,* 622 F.Supp. at 1512.

cerning any transaction or the construction, performance, or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined pursuant to the arbitration laws of the State of New York, before the American Arbitration Association, or before the New York Stock Exchange, Inc., or arbitration facility provided by any other exchange or the National Association of Securities Dealers, Inc., and in accordance with its rules then obtaining. The undersigned may elect in the first instance whether arbitration shall be by the American Arbitration Association or by the New York Stock Exchange, Inc., or other exchange or market facility, but if the undersigned fails to make such election, by registered letter or telegram addressed to you at your main office, before the expiration of five days after receipt of a written request from you to make such election, then you may make such election. The award of the arbitrators or of the majority of them, shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction.

(Emphasis added).

 Considered in logical order, defendants' first argument is that the scope of the arbitration clause is a matter for arbitration. Defendants cite no authority for this proposition. Moreover, it contravenes the Supreme Court's command in *Mitsubishi* that, in considering a motion to compel arbitration, the district court's first task is to determine if the parties agreed to arbi-

trate the particular type of dispute. 105 S.Ct. at 3354. Thus, to rule properly on the motions to compel arbitration, the Court must determine whether the language of ¶ 16 of the Customer Agreement encompasses plaintiff's section 10(b) claim. The determination is not a proper subject for arbitration.

Defendants' next argument—the one argued most forcefully—is that the first sentence of ¶ 16 is merely a notice to plaintiff of the federal securities law existing at the time of execution of the Customer Agreement. Defendants contend that SEC Rule 15c2–2 [6] required such a notice and that the notice is no more than the SEC's interpretation of federal case law regarding the arbitrability of federal securities law claims. Defendants add that they intended the first sentence of ¶ 16 to be the notice required by Rule 15c2–2 and not as a substantive limitation on the scope of arbitrable controversies.

While Defendants characterization of Rule 15c2–2 is arguably correct, it assumes that the language of ¶ 16 is ambiguous because evidence of the parties' intentions is relevant only if the language of the contract is unclear.[7] *Breed v. Insurance Company of North America,* 46 N.Y.2d 351, 413 N.Y.S.2d 352, 355, 385 N.E.2d 1280, 1282 (1978); *West, Weir & Bartel, Inc. v. Mary Carter Paint Co.,* 25 N.Y.2d 535, 307 N.Y.S.2d 449, 452, 255 N.E.2d 709, 712 (1969); *Western Union Telegraph Co. v. American Communications Association,* 299 N.Y. 177, 86 N.E.2d 162, 166 (1949). Defendants' assumption is un-

---

**6.** Rule 15c2–2 provides:

(a) It shall be a fraudulent, manipulative or deceptive act or practice for a broker or dealer to enter into an agreement with any public customer which purports to bind the customer to the arbitration of future disputes between them arising under the federal securities laws, or to have in effect such an agreement, pursuant to which it effects transactions with or for a customer.

(b) Notwithstanding paragraph (a) of this section, until December 31, 1984 a broker or dealer may use existing supplies of customer agreement forms if all such agreements entered into with public customers after [December 28, 1983] are accompanied by the separate written disclosure:

Although you have signed a customer agreement form with FIRM NAME that states that you are required to arbitrate any future dispute or controversy that may arise between us, you are not required to arbitrate any dispute or controversy that arises under the federal securities laws but instead can resolve any such dispute or controversy through litigation in the courts.

[subsection (c) omitted.]

17 C.F.R. § 240.15c2–2 (1986), *reprinted in* 3 Fed.Sec.L.Rep. (CCH) ¶ 25,107, at 18,242 (1987).

**7.** Paragraph 17 of the Customer Agreement provides that it will be governed by the laws of the State of New York.

founded. The first sentence of ¶ 16 could not more clearly exclude federal securities law claims from arbitration. It states very plainly that the "agreement to arbitrate *does not apply* to any controversy . . . for which a remedy may exist . . . under the federal securities laws." (Emphasis added). Defendants' contention that this language could apply to "any claim for which a remedy may exist" is obviously contrary to the quoted language and must be rejected.[8]

Defendants rely on recent district court decisions in *Finkle & Ross* and *Shotto* to support their "notice" argument; this reliance is misplaced. In *Finkle & Ross*, the customer agreement provided that the customer does "not waive any rights [he] may have under the Federal securities laws for controversies arising under such laws." 622 F.Supp. at 1507. The court held that this language was merely the notice required under Rule 15c2-2. *Id.* at 1510. Indeed, the language simply preserved the customer's rights whatever those rights may have been; it did not expressly exclude federal securities law claims from arbitration.

Similarly, in *Shotto*, the agreement stated that "[c]ertain decisions by the federal courts have held that if a dispute involves a [federal securities law claim], such arbitration clauses are void and unenforceable as applied to such claims and accordingly customers cannot be compelled to arbitrate such a claim. . . . Therefore, nothing in this paragraph shall in any way constitute a waiver or limitation of any rights which the [customer] may have under any Federal Securities laws." 632 F.Supp. at 519-20. Again, the court agreed with the defendant brokerage firm that this language was inserted only to comply with Rule 15c2-2. *Id.* at 523. As in *Finkle & Ross*, the language permitted the scope of arbitrable claims to expand or contract with changes in the federal securities laws. The language in Plaintiff's Customer Agreement

cannot be construed to have the same flexibility.

It is also worth noting, as Plaintiff has, that nowhere in ¶ 16 is there any indication that the first sentence of that paragraph is intended to comply with the notice requirements of Rule 15c2-2. The absence of such an indication belies Defendants' claim that the sentence is purely procedural and not a substantive limit on the arbitrability of Plaintiff's section 10(b) claim.

■ Under New York law, "[i]t is axiomatic that a contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language employed." *Morlee Sales Corp. v. Manufacturers Trust Co.*, 9 N.Y.2d 16, 210 N.Y.S.2d 516, 518, 172 N.E.2d 280, 282 (1961). Thus, as a matter of contract law Plaintiff's section 10(b) claim is not subject to arbitration. The Supreme Court's recent holding in *McMahon* that Rule 10b-5 claims may be arbitrated is inapposite to this case because the determination of the arbitrability of Plaintiff's section 10(b) claim is not at all based on federal law.

In light of this conclusion, Defendants' argument that *McMahon* abrogates Rule 15c2-2, and therefore permits arbitration of the 10(b) claim, must be rejected. *McMahon* does not require that section 10(b) claims be arbitrated; it merely permits arbitration if the parties have otherwise agreed to arbitration of such claims. 107 S.Ct. at 2339. As concluded above, the parties in this case have not so agreed.

### Are Plaintiff's State Law Claims Arbitrable?

Under the Supreme Court's holding in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), a district court *must compel* arbitration of state law claims if the parties have agreed to such arbitration. *Id.* at 217, 105 S.Ct. at 1240. Plaintiff Brick acknowledges that the language of the Cus-

---

**8.** The Court also has no need to consider the affidavit of James T. Ritt, Vice President and Assistant General Counsel of J.C. Bradford & Co. The affidavit purports to demonstrate that Bradford intended the first sentence to comply with the Rule 15c2-2 notice requirement. Such extrinsic evidence of Bradford's intent is irrelevant in light of the clear meaning of the sentence.

tomer Agreement requires arbitration of state law claims. Thus, he admits that his claims for breach of fiduciary duty, fraud, and negligent misrepresentation against J.C. Bradford & Co. must be arbitrated. Plaintiff denies, however, that any claims—state or federal—against the other Defendants are subject to arbitration.

Plaintiff argues that defendants Mulford, Snaman, and Seckler may not invoke the arbitration clause because they are not parties to the Customer Agreement and the Agreement by its terms does not cover them. He concludes that, regardless of the arbitrability of his section 10(b) claim against J.C. Bradford & Co., all his claims against the other Defendants must be resolved in the district court.

In 1984, this Court decided precisely this issue in *Bengiovi v. Prudential-Bache Securities, Inc.*, [1984–85 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,012, at 91,013 (Gasch, J.) [Available on WESTLAW, 1985 WL 2143]. The Court determined that a broker who was employed by Prudential-Bache was not covered by the customer agreement because his name did not appear on it and there was no indication that he was an intended beneficiary. *Id.* at 91,017 n. 9.

Since this Court's decision in *Bengiovi*, the Eighth and Ninth Circuits have considered the issue and determined that employees of a brokerage firm may be covered by an agreement with the customer though the employees are not signatories to the agreement. In *Letizia*, the Ninth Circuit held that Prudential Bache "clearly indicated its intention to protect its employees through its Customer Agreement." 802 F.2d at 1188. Unfortunately, the court did not state the factual basis for this conclusion. Finding that the employees were third-party beneficiaries of the customer agreement and the disclosed agents of the brokerage firm, the Eighth Circuit in *Nesslage* held that the employees were covered by the agreement. 823 F.2d at 233. Judge Harris of our District Court recently reached the same conclusion. *Shahmirzadi*, 636 F.Supp. at 55.

■ Unquestionably, J.C. Bradford & Co. did not expressly indicate in its Customer Agreement that it intended to extend to its employees any rights or privileges under the Agreement. Nevertheless, plaintiff clearly understood at the time he spoke with defendants Seckler and Snaman that they were representatives and employees of J.C. Bradford & Co. The Court also finds that individual defendants Mulford, Snaman, and Seckler are third-party beneficiaries of the Customer Agreement. These facts are reminiscent of the circumstances in *Nesslage*. Accordingly, the common law claims against the individual Defendants are within the scope of the arbitration clause, and *Byrd* requires that these claims be referred to arbitration. 470 U.S. at 217, 105 S.Ct. at 1240. Anticipating a successful opposition to all the motions to compel arbitration, Plaintiff moved to stay arbitration of the common law claims against J.C. Bradford & Co. pending trial of the remaining claims against Bradford and all the claims against the remaining Defendants. Plaintiff offers no reason to stay the arbitration but implies that a stay would foster efficient resolution of his claims. In light of the Court's holding that the common law claims against J.C. Bradford and the individual Defendants are arbitrable, Plaintiff's implication of efficiency evaporates. Further, in *Byrd*, the Supreme Court plainly stated that concerns for efficiency are overcome by the strong federal policy favoring arbitration. 470 U.S. at 219, 105 S.Ct. at 1241–42. In his concurring opinion, Justice White advised that there should be a "heavy presumption" against staying either litigation or arbitration. *Id.* at 225, 105 S.Ct. at 1245. Consequently, a stay of the arbitration is inappropriate.

### *Did Defendant Seckler Waive His Right to Arbitrate?*

As an afterthought, plaintiff argues that defendant Seckler waived his right to arbitrate by failing to file his motion to compel arbitration until ten months after the complaint was filed. Recently, in *National Foundation*, our Court of Appeals held that in determining whether a party has waived his right to arbitrate "[t]he essen-

tial question is whether, under the totality of the circumstances, the defaulting party has acted inconsistently with the arbitration right." 821 F.2d at 774. The court held that the defendant waived the right because he had participated in extensive discovery, settlement negotiations, and scheduling conferences, sought summary judgment, and moved to compel arbitration three years after the complaint was filed. *Id.* at 776. The defendant had argued that his motion was provoked by the Supreme Court's decision in *Byrd* which defendant argued overruled existing law in the District of Columbia Circuit that would have rendered an earlier motion futile. *Id.* at 776–77. The court disagreed finding no such law in the circuit. Finally, the court held that prejudice is not a prerequisite to waiver of the right to arbitrate; action inconsistent with the right is sufficient. *Id.* at 777.

This Court addressed the issue of waiver in *Bengiovi*. In that case, the Court held that defendant waived his right to arbitrate by making several requests for documents, deposing several persons, and moving for summary judgment. [1984–85 Transfer Binder] Fed.Sec.L.Rep. ¶ 92,012, at 91,017–18. This holding is consistent with the holding in *National Foundation* since the extensive participation in discovery and motion for summary judgment are inconsistent with arbitration.

■ In the present case, the only discovery requests have been by Plaintiff, and most discovery has been stayed pending resolution of the instant motion to compel arbitration. Defendant Seckler has not otherwise proceeded with litigation in this Court except to seek arbitration and respond to Plaintiff's motion for class certification pursuant to the Court's scheduling order of January 5, 1987. Seckler's actions in this litigation have not been inconsistent with the right to arbitrate and he has not waived that right.

## CONCLUSION

Defendant Mulford's motion to dismiss is denied for the reason stated in this Court's order of June 9 that "plaintiff had pled adequately a claim of securities fraud and market manipulation against all defendants."

The motions to compel arbitration are denied as to the section 10(b) claims against all defendants because the Customer Agreement expressly excludes federal securities law claims from arbitration.

The motions to compel arbitration are granted as to the common law claims against Defendants J.C. Bradford & Co., Mulford, Snaman, and Seckler because the signatory to a Customer Agreement, as well as the disclosed agents of the signatory and the intended third-party beneficiaries of the Agreement, may enforce provisions of that Agreement.

Plaintiff's motion to stay arbitration of the state law claims against J.C. Bradford & Co. is denied on the authority of the Supreme Court's decision in *Byrd*.

## ORDER

Upon consideration of the motion of defendant Mulford to dismiss, the motions of defendants J.C. Bradford & Co., Mulford, Snaman, and Seckler to compel arbitration, and the motion of plaintiff to stay arbitration, the memoranda in support thereof and in opposition thereto, the oral arguments, and for the reasons stated in the accompanying memorandum, it is by the Court this 15th day of October, 1987,

ORDERED that defendant Mulford's motion to dismiss be, and hereby is, denied; and it is further

ORDERED that the motions of defendants J.C. Bradford & Co., Mulford, Snaman, and Seckler to compel arbitration of plaintiff's common law claims (Counts V through VII) be, and hereby are, granted; and it is further

ORDERED that the motions of defendant J.C. Bradford & Co., Mulford, Snaman, and Seckler to compel arbitration of plaintiff's claim under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j (Count I) be, and hereby are, denied; and it is further

ORDERED that plaintiff's motion to stay arbitration be, and hereby is, denied; and it is further

ORDERED that the stay of discovery on plaintiff's motion for class certification be, and hereby is, lifted and that such discovery proceed for 40 days from the filing of this order.