John A. AMODIO, et al.

v.

BLINDER, ROBINSON & CO.

Civ. No. H–89–233 (PCD).

United States District Court,
D. Connecticut.

June 23, 1989.

Richard Weinstein, Pearson, Baum & Weinstein, West Hartford, Conn., for plaintiffs.

Eliot B. Gersten, Gersten & Clifford, Hartford, Conn., for defendant.

## RULING ON MOTION TO COMPEL ARBITRATION

DORSEY, District Judge.

Plaintiffs allege violations of Section 12 of the Securities Act of 1933, 15 U.S.C. § 77l; Section 10 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j; and the Connecticut Uniform Securities Act, Conn.Gen.Stat. §§ 36–470, 36–472 and 36–498. Plaintiffs also assert common law claims of negligent and fraudulent misrepresentation. Plaintiffs propose an action on behalf of all who invested in the "Federal National Mortgage Association Interest Only Security Leveraged Investment Program" ("Investment Program"). Defendant moves to stay these proceedings and to compel arbitration on the ground that relevant customer agreements contain arbitration clauses enforceable under the Federal Arbitration Act, 9 U.S.C. §§ 1–15.

*Discussion*

Section 2 of the Arbitration Act provides:

A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist of law or in equity for the revocation of any contract.

The Arbitration Act " 'was intended to revers[e] centuries of judicial hostility to arbitration agreements.' " *Shearson/American Express v. McMahon*, 482 U.S. 220, 225, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987), quoting *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 510, 94 S.Ct. 2449, 2453, 41 L.Ed.2d 270 (1974). It is an expression of a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). " '[T]he act was to assure that those who desired arbitration and whose contracts related to interstate commerce that their expectations would not be undermined by federal judges, or ... by state courts or legislatures.' " *Southland Corp. v. Keating*, 465 U.S. 1, 13, 104 S.Ct. 852, 859, 79 L.Ed.2d 1 (1984), quoting *Metro Indus. Painting Corp. v. Terminal Const. Co.*, 287 F.2d 382, 387 (2d Cir.1961). The Act creates a body of federal substantive law and "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Hosp.*, 460 U.S. at 24–25, 103 S.Ct. at 941. "The Arbitration Act, standing alone, therefore mandates enforcement of agreements to arbitrate statutory claims." *McMahon*, 482 U.S. at 226, 107 S.Ct. at 2337.

"When considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be non-arbitrable;[1] and fourth, if the court concludes that some, but not all, of the claims in the action are subject to

---

**1.** Plaintiffs herein have alleged violations of both the Securities Act of 1933 and the Securities and Exchange Act of 1934. The Supreme Court has found that neither Act expresses any intent on the part of Congress to void pre-dispute arbitration agreements. *See Rodriguez de Quijas v. Shearson/American Express*, —— U.S. ——, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (construing 1934 Act). Accordingly, arbitration of plaintiffs' federal statutory claims would be permissible unless the parties have otherwise agreed.

arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." *Creative Securities Corp. v. Bear Stearns & Co.*, 671 F.Supp. 961, 965 (S.D.N.Y.1987), *aff'd mem.*, 847 F.2d 834 (2d Cir.1988).

■ In support of its motion to compel arbitration, defendant has produced three exhibits, each containing an arbitration provision which it contends evidences an agreement to arbitrate all disputes. The first exhibit is entitled Client's Agreement and contains the following arbitration provision:

> Any controversy arising out of or relating to my account, to transactions with or for me to this Agreement or the breach thereof ... shall be settled by arbitration in accordance with the rules of the NASD.... This provision does not apply to any claim arising out of Federal securities law.

The second exhibit is a copy of the back side of a trade confirmation which contains the following arbitration provision:

> It is understood that the following agreement to arbitrate does not constitute a waiver of the right to seek a judicial forum where such a waiver would be void under the federal securities laws. All controversies which may arise between us concerning this transaction or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration....

Finally, the third exhibit contains cash account agreements signed by three of the plaintiffs. The agreement signed by plaintiffs Kessler and Amodio provides that: "[a]ll controversies which may arise between us concerning this transaction or the construction, performance, or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration." While the agreement signed by plaintiff Leahy provides that: "[i]t is understood that the following agreement to arbitrate does not constitute

a waiver of the right to seek a judicial forum where such a waiver would be void under the federal securities laws. All controversies which may arise between us concerning this transaction or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration."

Plaintiffs contend that the Client's Agreements established the margin account between each respective plaintiff and defendant and was the only agreement executed by each plaintiff with respect to the margin investments in issue. Thus, plaintiffs argue that the Client's Agreement controls the issue of arbitrability. Defendant argues that plaintiffs have ratified additional clauses for arbitration, namely the trade conformations and cash account agreements, which evidence an agreement to arbitrate all disputes notwithstanding the limiting language in the Client's Agreement.

Defendant's argument, although not particularized in its brief, appears to rely on language in the trade confirmations and cash account agreements which provide that "[a]ll controversies which may arise between us concerning this transaction or the construction, performance or breach of this or *any other agreement between us, whether entered into prior, on or subsequent to the date hereof,* shall be determined by arbitration." (Emphasis added). Defendant argues that plaintiffs can be bound by the arbitration provisions in their account agreements, as well as the trade confirmations containing the arbitration provision upon which defendant relies to pursue its arbitration. Plaintiffs respond by arguing that the Client's Agreements containing the limiting language upon which they purport to rely in opposing arbitration have not been modified by any subsequent agreements. Further, they argue that the subsequent agreements referred to by defendant either do not pertain to the margin investments in issue or were not

signed by plaintiffs.[2]

Plaintiffs' claims herein center on alleged misrepresentations and omissions concerning margin investments made in the Investment Program in issue. The Client's Agreements executed by each plaintiff established the margin account under which such investments were made. *See* Transcript of Testimony of J. Richard Busque (5/19/89) at 28–30. The arbitration provisions in the cash account agreements and the trade confirmation are broader than that contained in the Client's Agreement and purport to submit all controversies to arbitration.[3] These provisions conflict with the arbitration provision of the Client's Agreement which excludes federal securities claims from its scope. However, neither refers to nor expressly modifies or supersedes the arbitration provision in the Client's Agreement or any other existing or subsequent arbitration provision. Although the arbitration clause contained in the trade confirmations and cash account agreements purports to apply to "any other agreement between [the parties], whether entered into prior, on or subsequent to the date hereof," it does not specifically negate the limited language of arbitration contained in the Client's Agreement. Each plaintiff executed a Client's Agreement establishing their margin account which contained an arbitration provision expressly providing that it did "not apply to any claim arising out of federal securities law." The fact that other arbitration provisions did not contain such limiting language does not negate the limited scope of arbitration provided in the Client's Agreement. Plaintiffs contracted for that language in connection with their margin accounts and are entitled to rely on it in relation to a dispute arising from such margin investments. Accordingly, the arbitration provision in the Client's Agreement is found to control the issue of arbitrability of plaintiffs' claims raised in this dispute.

█ The next issue is the scope of that arbitration provision, the last clause of which provides that "[t]his provision does not apply to any claim arising out of federal securities laws." Defendant argues that this clause was required by SEC Rule 15c2–2, 17 C.F.R. § 240.15c2–2, which has since been rescinded. Defendant argues that the rescission and recent Supreme Court authority permitting arbitration of claims arising under both the 1933 and 1934 Act renders the disputed clause meaningless. Plaintiffs contend that there is no basis for ignoring the clause's unequivocal language. Defendant's argument in the face of a similar exclusion clause has been rejected. *Brick v. J.C. Bradford & Co.*, 677 F.Supp. 1251, 1255–56 (D.D.C.1987). The clause in *Brick* provided that the "agreement to arbitrate *does not apply* to any controversy ... for which a remedy may exist ... under the federal securities laws." *Id.* at 1256 (emphasis added). As a matter of contract law, that clause clearly excluded federal securities claims from arbitration. *Id.* Absent ambiguity in the provision or any indication that the clause constituted a mere notice or would be vitiated upon a change in federal law regarding arbitration of securities disputes, the exclusion clause would be enforced. *Id.; see also Federal Ins. Co. v. Mallardi*, 696 F.Supp. 875, 879–80 (S.D.N.Y.1988); *Church v. Gruntal & Co.*, 698 F.Supp. 465, 468–69 (S.D.N.Y.1988); *but see Sease v.*

2. The fact that the trade confirmations were not signed by plaintiffs is not dispositive. Courts have "recognized that arbitration clauses contained in confirmation slips are enforceable as written agreements to arbitrate." *Middlebrooks v. Merrill Lynch, Pierce, Fener & Smith, Inc.*, Sec.L.Rep. (CCH) ¶ 94,399 (N.D.Ala.1989); *see also Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir.1987) (long-standing and ongoing relationship evidenced agreement to arbitrate disputes under unsigned sales confirmation forms).

3. Although not all of the Client's Agreements are dated, it appears that most were executed in March of 1988. The cash account agreements executed by plaintiffs Kessler and Amodio are dated in May 1988, while that executed by plaintiff Leahy is dated January 14, 1988. Further, while there seems to be no dispute regarding the receipt of the trade confirmations, there is no evidence as to the dates of such receipt nor the number of confirmations received, although presumably such confirmations were received after the execution of the Client's Agreements to confirm plaintiffs' margin investments.

*Paine Webber, Inc.*, 697 F.Supp. 1190, 1193 (S.D.Fla.1988).

The reasoning of *Brick* is persuasive as to the present case. While the clause in the arbitration agreement may have been inserted only to comply with SEC Rule 15c2–2, this agreement nowhere links the clause to the continued existence of the regulations. It is not stated to be dependent on the state of the law. The clause unequivocally excludes federal securities claims. Defendant could have drafted a narrower clause providing only that the arbitration provision did not operate to waive any rights to seek a judicial forum where such a waiver would be void under federal securities law. Instead, defendant drafted a clause which unequivocally excluded federal securities claims from arbitration. Plaintiffs have the right to rely on the express language of the exclusionary clause. Defendant cannot complain that it is being required to abide by an exclusion that it drafted and which is unambiguous. The law has changed, to be sure. However, defendant did not anticipate nor provide for such change when it drafted the agreement.

The cases cited by defendant which ordered arbitration notwithstanding "Rule 15c2–2 language" are distinguishable. Those cases did not involve language expressly exempting federal securities claims from arbitration. For example, in *DeKuyper v. A.G. Edwards & Sons*, 695 F.Supp. 1367, 1368–69 (D.Conn.1987), the language at issue did not contractually forbid arbitration of federal securities claims, but rather notified the customer that "[a]rbitration cannot be compelled with respect to disputes arising under federal securities laws." This provision was held not to be a "bargained-for-term of the contract," but merely provided notice of the customer's rights. *Id.* at 1369. Similarly, in *Finkle & Ross v. A.G. Becker Paribas, Inc.*, 622 F.Supp. 1505, 1510 (S.D.N.Y.1985), the arbitration agreement provided that the customer did not "waive any rights [they] may have [had] under the federal securities laws for controversies arising under such laws." That language was held not to function as an agreement between the parties, but merely put the customer on notice to investigate his or her specific rights regarding arbitration. *Id.* at 1510.

In the case at bar, the arbitration agreement expressly "does not apply to any claim arising out of Federal securities law." An agreement to arbitrate must be interpreted in accordance with generally accepted principles of contract law. *See Genesco, Inc.*, 815 F.2d at 845. There is no basis for ignoring the unequivocally expressed intent of the parties to exclude federal securities claims from arbitration. Though defendant may have included the exclusion in response to the regulation, as it reserved no right to vitiate the exclusion when the reason for it evaporated, it cannot unilaterally impose its rationale for the content of the agreement. A contract is a meeting of the minds of the parties. The fact that one party's reason for agreeing as they did has now disappeared is not a justification for that party changing the agreement. Therefore, the exclusion claim remains in effect and plaintiffs' federal securities law claims are not subject to the arbitration agreement.

*Summary*

Defendant's motion to compel arbitration of plaintiffs' claims under Section 12 of the Securities Act of 1933, 15 U.S.C. § 77*l*, and Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j, is denied.

Defendant's motion to compel arbitration of plaintiffs' state statutory and common law claims is granted. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217, 105 S.Ct. 1238, 1240, 84 L.Ed.2d 158 (1985).

As some of the claims in the case are arbitrable, there remains the question whether to stay the remaining claims pending arbitration. "[A]rbitration and federal litigation should proceed simultaneously absent compelling reasons to stay the litigation." *Chang v. Lin*, 824 F.2d 219, 223 (2d Cir.1987). The record reflects no reason to defer resolution of plaintiffs' federal securities law claims pending arbitration of their state claims. *See, e.g., Byrd*, 470 U.S. at 225, 105 S.Ct. at 1244 (White, J., concur-

ring) ("[T]he heavy presumption should be that the arbitration and the lawsuit will each proceed in its normal course."). Accordingly, defendant's motion to stay these proceeds pending arbitration is denied.

SO ORDERED.