Jasen, J.
Mary Carter Paint Company (Mary Carter) is a manufacturer and distributor of paint and related products which in 1961 were sold at retail through approximately 600 franchised dealers and 80 company-owned stores located in 36 States throughout the country.
For a number of years prior to 1961, Mary Carter handled the advertising for its own stores. However, each franchise dealer placed his own advertising, selected his own media, directly entered into his own binding contracts with the media involved, and determined how much or how little he would spend on advertising, without limitation. The franchise dealer would be reimbursed by Mary Carter 50% of the cost of such advertising.
About April, 1961, Mary Carter decided to hire a national advertising agency to handle its, advertising. The account was subsequently awarded to plaintiff’s predecessor, Ellington *539 & Company, and a written agency agreement was consummated between Ellington and Mary Carter" for the period from July 1, 1961 to June 30,1962. Ellington’s original plan was to nationalize all advertising so as to give Mary Carter more direct control over its franchise dealers.
Upon the execution of the contract, Mary Carter turned over to Ellington all of the advertising it controlled at that time — i.e., for the 80 company-owned stores. However, as to the franchise dealer changeover to direct national advertising, it was decided that only the western region of the country should be shifted over to "national control ’ ’, and that as anticipated problems in the changeover were resolved, the remainder of the country, the midwestern and eastern regions, would be converted.
In the words of the Appellate Division, the test changeover in the western region “ produced disastrous results ” and “ the independent dealers, with few exceptions, complained of a breakdown in the handling of local advertising campaigns for lack of familiarity with local market conditions and local advertising media.” As a result, in December, 1961, defendant decided to abandon the “ national control ” plan as tested in the western region and reinstated its prior co-operative system of local advertising. It offered, however, to retain Ellington as its advertising agency on direct national advertising for its own stores, but Ellington declined because of the limited commissions it would receive in handling advertising for 80 stores. Instead, Ellington proposed on December 18,1961 to modify the original agreement between the parties so as to perform certain limited services for the period ending September 26, 1962, to be compensated “by an amount equal to the 17.65% commission on net billings of $250,000 * * * plus a service fee in the amount of $21,000”.
Mary Carter declined to accept this proposed modification stating that “ [e]ven under the terms of our contract, wherein you provide us with full services, the amount of money involved on advertising which we will offer between now and the conclusion of the contract, would not begin to approximate that figure.”
Plaintiff then commenced this action containing six causes of action alleging a breach of contract. After a trial without *540 jury, judgment was awarded to plaintiff in the sum of $4,257 on .the first cause of action; and in the sum of $59,145 on the second, third, fourth and fifth causes of action. The sixth cause of action was dismissed.
The Appellate Division affirmed the judgment on the first and sixth causes of action and modified the award of $59,145 on the remaining causes of action by increasing it to $100,935. This figure of $100,935 represented 15% of the total amount of direct national advertising and franchise dealer advertising of Mary Carter products during the first half of 1962—a figure which would approximate plaintiff’s commissions had the “Ellington Plan ” been carried out. From this amount was to be subtracted the actual savings to Ellington from the nonperformance of the contract. This saving was later determined to be $33,500 leaving damages of $67,435.
The judgment on the first cause of action represents services, costs and disbursements such as purchases of radio time made by Ellington and is not seriously disputed by defendant here. Consequently, the problems herein considered only relate to the second through fifth causes of 'action.
There are basically two issues presented on this appeal. First, whether Mary Carter breached its contract with Ellington; and, second, assuming that there was a breach, what is the proper measure of damages.
The Appellate Division, in modifying the trial court’s decision, held that “ [ojn the question of breach of the agreement and the liability for damages there was a mixed question of law and fact properly resolved by the trial court.” (25 A D 2d 85.)
We cannot agree. The rule in this State is well settled that the construction of a plain and unambiguous contract is for the court to pass on, and that circumstances extrinsic to the agreement will not be considered when the intention of the parties can be gathered from the instrument itself. (See Bethlehem Steel Co. v. Turner, 2 N Y 2d 456, 459; Heller & Henretig, Inc., v. 3620-168th St., 302 N. Y. 326; Johnson v. Western Union Tel. Co., 293 N. Y. 379, 387.)
The third paragraph of the contract clearly states that “ [w]e agree to pay you at current published rates for advertising *541 we order in all media * * * In such cases we agree to pay you at current published rates plus an amount which, together with the commission, if any, allowed by media, will yield you fifteen per cent (15%) of your total charge to us, before cash discount.” (Emphasis added.) Thus, Mary Carter agreed to pay a commission on all advertising which "we order ”. The “we” undisputably refers to Mary Carter, Inc.— not the semi-independent franchise dealers. The plaintiff here claims commissions equivalent to the amount of local advertising ordered by the 600 franchise dealers in their discretion subsequent to the cancellation of the disastrous western region test. It thus becomes crucial to determine whether the contract imposes a requirement that all advertising be placed by Mary Carter itself nationally. If it does not, the plaintiff is not entitled to commissions on this advertising since it admittedly was not actually placed by Mary Carter, or at its request.
The courts below found that the contract did not mandate that any specific amount of advertising would be placed with the plaintiff. Nor does the contract require that the Ellington plan or any other specific mode of advertising be followed. Indeed, the contract states that Ellington is to plan, create, and execute the advertising to “ our satisfaction and yours ”. This reinforces the conclusion that the contract is a flexible one allowing various plans of advertising to be followed.
It is undisputed that both parties anticipated franchise dealer resistance to the Ellington plan. Thus it cannot be said to be a surprise that the plan proved a failure. Consequently, in light of this knowledge, it is logical that any guarantees of commissions intended by the parties would have been included in what is an otherwise complete written document. Yet, the contract contains no guarantees and. requires no specific advertising plan to be followed.
It should be noted that the proposed Ellington modification to the original contract, which was rejected by Mary Carter, did contain a guarantee of ‘ ‘ net billings of $250,000 * * * plus a service fee in the amount of $21,000 ”. This suggests that if the parties intended any guarantees in the contract they would have specifically mentioned them.
When damages were found to approximate the total amount expended for franchise dealer advertising in their own respective *542 localities, the courts below, in effect, imposed a contractual requirement that Mary Carter place all of its publicity through a national advertising plan. The contract imposes no such requirement. As this court recently stated, “ [w]e ‘ concern ourselves with what the parties intended, but only to the extent that they evidenced what they intended by what they wrote ’.” (Rodolitz v. Neptune Paper Prods., 22 N Y 2d 383, 387; Raleigh Assoc. v. Henry, 302 N. Y. 467, 473.) Here the contract clearly provided that Mary Carter was only required to pay a commission on the national advertising it placed directly.
It is difficult to reconcile the Appellate Division allowance of plaintiff’s claim for commissions for total local advertising outlays by Mary Carter in co-operation with their franchise dealers after the disastrous advertising campaign in the western region with the rejection of any such allowance for commissions prior thereto. It does not seem reasonable to disallow commissions while a plan is being tested and then to subsequently allow them after the plan fails.
It is not logical .to assume that the parties agreed to apply the plan to the midwestern and eastern regions regardless how disastrous the test proved in the western region. This is unreasonable since the purpose of any test is to determine if the plan is feasible. The western region plan certainly did not prove it was feasible — but rather that if would not work. Then how illogical it is to impose liability upon Mary Carter for indirectly placed local advertising for the period following the disastrous test, when the Appellate Division held that “ the liability for commissions, was incurred during [the. test] period only as to directly placed national advertising ”. (25 A D 2d 85. Emphasis added.)
It was also erroneous to find a breach in regard to the remainder of the national advertising. Mary Carter offered to let Ellington continue to handle this advertising, but they refused. Ellington cannot be awarded damages for services which they refused to perform.
Accordingly, the order of the Appellate Division should be modified by dismissing the second, third, fourth and fifth causes of actions, and as so modified, affirmed, with costs to the appellant.
*543 Chief Judge Fuld and Judges Burke, Scileppi and Gibson concur with Judge Jasen ; Judge Bergan dissents and votes to affirm on the opinion at the Appellate Division (25 A D 2d 81); Judge Breitel taking no part.
Order modified in accordance with the opinion herein, and, as so modified, affirmed, with costs.