**HYATT CORPORATION, d/b/a Hyatt Regency Buffalo, Plaintiff,**

**v.**

**WOMEN'S INTERNATIONAL BOWLING CONGRESS, INC., Defendant.**

No. 97–CV–767A F.

United States District Court, W.D. New York.

Aug. 25, 1999.

Howe & Hutton, Jonathan T. Howe, Samuel J. Erkonen, of counsel, Chicago, Illinois, for plaintiff.

Albrecht, Maguire, Heffern & Gregg, P.C., Richard A. Braden, of counsel, Buffalo, New York, for plaintiff.

Chris Jensen, Atlanta, GA, for defendant.

Nixon, Hargrave, Devans & Doyle, LLP, John J. Weinholtz, of counsel, Buffalo, New York, for defendant.

## DECISION and ORDER

FOSCHIO, United States Magistrate Judge.

### JURISDICTION

The parties to this action consented to proceed before the undersigned on January 14, 1999. The matter is currently before the court on Defendant's motion for summary judgment filed January 19, 1999 (Docket Item No. 26), Plaintiff's motion for summary judgment filed January 22, 1999 (Docket Item No. 28), and Defendant's alternative motion for partial summary judgment filed January 29, 1999 (Docket Item No. 33).

### BACKGROUND

Plaintiff, Hyatt Corporation, d/b/a Hyatt Regency Buffalo ("Hyatt"), commenced this action in New York Supreme Court, Erie County with the filing of the summons and complaint on August 27, 1997. On October 1, 1997, it was removed to this court based on diversity jurisdiction.

Hyatt claims damages for breach of contract (Complaint Count I) based on the failure of Defendant, Women's International Bowling Congress, Inc. ("WIBC"), to pay for a block of rooms which Hyatt had, by written agreement with WIBC, agreed to make available to members of the WIBC in connection with the WIBC's Annual Meeting and Championship Tournament held in Buffalo, New York over the period April 4, 1996 through May 25, 1996. Hyatt alternatively pleads a cause of action (Complaint Count II) based on "detrimental reliance." Hyatt operates the Hyatt Regency Buffalo hotel ("the Hyatt Regency Buffalo" or "the hotel") as agent for West Genesee Hotel Associates ("West Genesee"), a New York limited partnership which owns the hotel under a complex management agreement ("Management Agreement").

On September 11, 1998, the undersigned denied Hyatt's motion to remand the action to state court as it found West Genesee the real party in interest for purposes of diversity jurisdiction.

On January 19, 1999, WIBC moved for summary judgment and filed an attorney affirmation, statement of undisputed facts, memorandum of law and a volume of ex-

hibits in support. Hyatt filed, on February 24, 1999, a memorandum of law in opposition to summary judgment. On April 30, 1999, WIBC filed a memorandum of law in further support of summary judgment.

On January 22, 1999, Hyatt filed a motion for summary judgment accompanied by an attorney affirmation, memorandum of law and statement of undisputed facts. WIBC responded by filing a memorandum of law on February 24, 1999. On April 30, 1999, Hyatt filed a reply memorandum of law in further support of its summary judgment motion.

On January 29, 1999, WIBC filed a motion for partial summary seeking alternative relief in the event its first motion for summary judgment is not granted. Specifically, in its later motion, WIBC seeks to limit its liability for damages to the amount Hyatt would have received for room revenue pursuant to the Management Agreement between Hyatt and West Genesee as, according to WIBC, Hyatt's claim is that of a third-party beneficiary. The motion was accompanied by an attorney affirmation, memorandum of law, and a volume of exhibits.

Hyatt's memorandum of law in opposition to WIBC's partial summary judgment motion was filed on February 25, 1999. In further support of its motion for partial summary judgment, WIBC filed a reply memorandum of law on April 30, 1999. Oral argument was deemed unnecessary.

Based on the following, Defendant's motion for summary judgment is GRANTED and for partial summary judgment is DISMISSED as moot, and Plaintiff's motion for summary judgment is DENIED.

## FACTS[1]

In 1993, WIBC selected Buffalo, New York as the site of the 1996 Women's International Bowling Congress Annual Meeting and Championship Tournament ("the Convention"), beginning April 4, 1996 through May 25, 1996. The Hyatt Regency Buffalo was chosen as WIBC's headquarters for the Convention. In connection with that designation, WIBC negotiated with the Hyatt Regency Buffalo to hold a block of rooms at the hotel ("the room block") at discounted rates for use by attendees throughout the duration of the Convention. The parties agree that the Hyatt Regency Buffalo was chosen as the headquarters for the Convention because it was able to provide suitable accommodations and facilities for the Convention attendees, exhibitors, sponsors, media representatives, tournament participants and guests. Defendant's Memorandum at 3–4; Plaintiff's Memorandum at 3–4. It was anticipated that the attendees would spend between $25 million to $35 million in the Buffalo area economy.

The parties agree that the anticipated number of attendees who would choose to stay at the Hyatt Regency Buffalo, upon which the room block was projected, was predicated on data based on actual preferred hotel choices of attendees at prior conventions. WIBC could not direct prospective tournament competitors to attend the convention and no attendee was required to stay at the Hyatt Regency Buffalo; rather, potential attendees were given a choice of more than 40 hotels within the Buffalo vicinity, and were requested to indicate up to three choices in order of preference.

The parties maintain this dispute turns on the interpretation of the first two paragraphs of the Agreement executed by their representatives. Those paragraphs state

1. *Room Commitment* —You [Hyatt] have agreed to hold a block of 325 rooms for WIBC during the peak convention period, and 50 rooms throughout the Tournament period. From past experience, we estimate the following number of rooms will be picked up from your block as headquarters hotel.

---

**1.** Taken from the pleadings and motion papers filed in this action.

| April 14, Sunday | — 30 | April 20, Saturday | — 325 |
|---|---|---|---|
| April 15, Monday | — 50 | Arpil 21, Sunday | — 325 |
| April 16, Tuesday | — 50 | April 22, Monday | — 315 |
| April 17, Wednesday | — 85 | April 23, Tuesday | — 315 |
| April 18, Thursday | — 200 | April 24, Wednesday | — 246 |
| April 19, Friday | — 275 | April 25, Thursday | — 50 |

2. *Reservations* —As discussed, our in-house travel agency will process hotel reservations for our bowling participants (starting March 28), as well as for the delegates during the peak convention period (April 18–April 25), with the exception of 100 rooms which are designated the WIBC Block and which WIBC will handle directly with the Hyatt Regency Buffalo.

The majority of the bowling participants will require rooms for two or three nights while the delegates generally require rooms for four (4) nights. Many of them will request the double/doubles to accommodate four or five persons per room. We wish to call your attention that the usual 10 percent "no shows" does not hold true with the bowlers; if one member of the team cannot make it, they get a substitute. Therefore, it is advisable not to overbook.

---

Agreement, Exhibit 1 to Notice of Removal filed October 1, 1999 (Docket Item No. 1), ¶¶ 1–2.

A discounted rate was to be charged for rooms held within the room block. Agreement, ¶ 5. The Agreement also contained an integration clause stating

the points covered in this letter constitute the entirety of our agreement and . . . no verbal or other commitments apply. Subsequent amendments and changes must be made in writing prior to implementation.

Agreement at 5.

The Agreement was executed by the Executive Director of WIBC, Sandra L. Shirk, on May 17, 1993, and by the Director of Sales for the Hyatt, Alan J. Fabris, on May 25, 1993.

An addendum to the Agreement dated May 27, 1993 drafted by WIBC amended paragraph 2 of the Agreement by increasing for WIBC "VIPs," Board of Directors members and WIBC staff the number of rooms to be put aside out of the 325 room block to 150 from 100. May 27, 1993 Agreement Addendum, Exhibit B to Agreement. The price for those rooms was also modified. *Id.* This addendum was executed by Ms. Shirk on behalf of WIBC and by Mr. Fabris on behalf of Hyatt. *Id.*

Subsequently, a proposed addendum to the Agreement, dated February 20, 1995 and drafted by Hyatt Sales Manager, Jennifer A. Hickey, increased the number of rooms to be held in the room block as follows:

| April 14, Sunday | — 50 | April 20, Saturday | — 325 |
|---|---|---|---|
| April 15, Monday | — 75 | April 21, Sunday | — 325 |
| April 16, Tuesday | — 75 | April 22, Monday | — 325 |
| April 17, Wednesday | — 100 | April 23, Tuesday | — 325 |
| April 18, Thursday | — 325 | April 24, Wednesday | — 300 |
| April 19, Friday | — 325 | April 25, Thursday | — 100 |

Proposed February 20, 1995 Agreement Addendum, Exhibit 1 to Defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment as to Liability filed February 24, 1999 (Docket Item No. 37) ("Defendant's Response in Opposition") at 1.

The proposed addendum also stated that Hyatt had agreed to increase the number of rooms in the room block based on a conversation between Ms. Hickey and Laurie Serena, WIBC's Travel and Meetings Manager, and that WIBC "will be able to completely fill [its] room commitment at the headquarter hotel, Hyatt Regency Buffalo." *Id.* The proposed addendum also called for Ms. Serena's signature indicating her approval and that a signed copy be returned to Hyatt. *Id.*

Nothing in the record, however, shows the proposed addendum was ever accepted by WIBC. Rather, on February 21, 1995, Ms. Shirk drafted a different addendum which also increased the size of the room block at the hotel, but made no mention of an agreement by WIBC to fill any room commitment. February 21 Agreement Addendum, Exhibit C Agreement. Specifically, the addendum drafted by Ms. Shirk states: "Extension of room block—A block of 25 additional rooms will be held each night for April 4 – 14 and April 26 – May 26, 1996 for all WIBC members." *Id.* Ms. Hickey signed this addendum on February 22, 1995, indicating her acceptance of the terms. *Id.*

The Agreement was further amended on July 6, 1995 by Hyatt and WIBC to increase the number of rooms held for April 16, 1996 to 105 from 75 and, for April 17, 1996 to 105 from 100. July 6, 1995 Agreement Addendum, Exhibit D to Agreement.

Prior to the opening of the WIBC convention in Buffalo, on April 4, 1996, Hickey presented Serena with a memorandum regarding the variance between the number of rooms in the room block and the number of rooms actually reserved by attendees. Hyatt Memorandum dated April 4, 1996, Exhibit 2 to Defendant's Response in Opposition at 1. According to the memorandum, Hyatt stated its intention to present WIBC with another addendum to the Agreement, specifically, a clause requiring WIBC to pay for all the rooms held in the room block, even if not actually used, described as "an attrition clause." *Id.* As with the first addendum proposed by Hickey, there is no evidence in the record that this proposed addendum was ever executed by the parties.

Hyatt nevertheless contends that pursuant to paragraph 1 of the Agreement, WIBC agreed to pay for the entire room block of 4,735 rooms [2] held for the duration of the Convention regardless of whether those rooms were ever actually reserved or used. According to Hyatt, WIBC only used and thus paid for 2,265 of the rooms held under the terms of the Agreement.

---

2. According to the Agreement and its addenda, Hyatt was required to hold 4,735 rooms, Complaint, ¶ 2, calculated as follows:

| | | |
|---|---|---|
| 50 rooms held each day for 11 days from April 4, 1996 through April 14, 1996: | $50 \times 11 =$ | 550 |
| 75 rooms held 1 day, April 15, 1996: | $75 \times 1 =$ | 75 |
| 105 rooms held each day for 2 days, April 16 1996 through April 17, 1996: | $105 \times 2 =$ | 210 |
| 325 rooms held each day for 6 days from April 18, 1996 through April 23, 1996: | $325 \times 6 =$ | 1,950 |
| 300 rooms held for 1 day, April 24, 1996: | $300 \times 1 =$ | 300 |
| 100 rooms held for 1 day, April 25, 1996: | $100 \times 1 =$ | 100 |
| 50 rooms held each day for 31 days from April 26, 1996 through May 26, 1996: | $50 \times 31 =$ | 1,550 |
| Total rooms held for Convention: | | 4,735 |

Thus, the term "rooms" as used in the Complaint actually refers to room nights, *i.e.*, a room times the number of nights expressed in the Agreement.

According to WIBC, although it negotiated and drafted the Agreement by which Hyatt was to hold the rooms, upon which Hyatt's claim is based, WIBC never agreed to pay for any rooms not actually reserved by an attendee, *i.e.,* participants, WIBC directors, staff or "VIPs." WIBC asserts it was responsible only for rooms which WIBC actually reserved out of the block held for WIBC directors, staff and VIPs and that paragraph 2 specifies how all room reservations are to be made. WIBC further maintains the individual convention participants, bowlers and delegates, were personally responsible for payment of rooms they in fact reserved.

WIBC also contends that Hyatt did not hold the entire block of rooms contracted for under the Agreement. Defendant's Response in Opposition at 7. Rather, 449 of the rooms which were to be held in the WIBC room block, in accordance with the terms of the Agreement, were resold to other customers of the hotel, thus significantly reducing Hyatt's damages claim. *Id.* at 8.

## DISCUSSION

### 1. Choice of Law

As the instant matter is before the court based on diversity jurisdiction, the court examines what state's law applies to the contract at issue.[3] A federal court sitting in diversity must apply the choice of law rules of the forum state, here, New York. *Lazard Freres & Co. v. Protective Life Ins. Co.,* 108 F.3d 1531, 1538 (2d Cir.) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)), *cert. denied,* 522 U.S. 864, 118 S.Ct. 169, 139 L.Ed.2d 112 (1997).

■ According to New York choice of law rules, the law of the jurisdiction determined as having the greatest interest in, or relationship to, the dispute applies. *Lazard Freres & Co, supra,* at 1539 (quoting *Brink's Ltd. v. South African Airways,* 93 F.3d 1022, 1031 (2d Cir.1996) (citing *Babcock v. Jackson,* 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 283–84 (1963))). Here, New York has the most significant contacts to the contract at issue as although the Agreement was drafted by WIBC which is headquartered in Wisconsin, it was negotiated primarily in New York while WIBC representatives were visiting, the Hyatt Regency Buffalo is located in New York and is also the primary locus where the Agreement was to be performed. Accordingly, as New York has the most significant contacts to the contract at issue, it has the greatest interest in the dispute and, as such, the court will apply New York law.

### 2. Summary Judgment

Summary judgment of a claim or defense will be granted when the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a) and (b); *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). The moving party for summary judgment bears the burden of establishing the nonexistence of genuine issue of material fact. If there is any evidence in the record based upon any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party cannot obtain a summary judgment. *Celotex, supra,* at 331, 106 S.Ct. 2548.

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no issue as to any material fact, and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P.

---

3. Although the parties do not dispute and have proceeded in this action on the assumption that New York law applies, their failure to stipulate or submit authority in support of that assumption obliges the court to address the question.

56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson, supra,* at 247–48, 106 S.Ct. 2505.

### 3. *Motions for Summary Judgment Based on Construction of Contract*

Both parties urge the court to construe the Agreement favorable to their respective motions for summary judgment. WIBC argues that no facts pleaded within the four corners of the Complaint, if true, demonstrate that WIBC ever agreed to pay for the rooms held by Hyatt pursuant to the Agreement, but not actually occupied, as WIBC neither guaranteed a specific number of reservations nor agreed to pay for rooms not used. Further, WIBC contends the contact on its face fails to show that Hyatt intended or expected WIBC to use all the rooms held in the block. Defendant's Memorandum of Law Supporting Motion for Summary Judgment filed January 19, 1999 (Docket Item No. 27) ("Defendant's Memorandum"), at 1. Hyatt maintains it is implied in the Agreement that all the rooms held by Hyatt in the room block pursuant to the Agreement would be used and that WIBC's failure to pay for the unused rooms thus constitutes a breach of the Agreement. Plaintiff's Memorandum of Law in Support of Its Motion for Summary Judgment as to Liability filed January 22, 1999 (Docket Item No. 29) ("Plaintiff's Memorandum"), at 10–11; Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment filed February 25, 1999 (Docket Item No. 41) ("Plaintiff's Memorandum in Opposition"), at 2–3.

Where a contract is unambiguous, the question of its interpretation is one of law properly reached on a motion for summary judgment. *Rothenberg v. Lincoln Farm Camp., Inc.,* 755 F.2d 1017, 1019 (2d Cir.1985) (citing *West, Weir & Bartel, Inc. v. Mary Carter Paint Co.,* 25 N.Y.2d 535, 307 N.Y.S.2d 449, 255 N.E.2d 709, 712 (1969)); *Bethlehem Steel Co. v. Turner Construction Co.,* 2 N.Y.2d 456, 161 N.Y.S.2d 90, 141 N.E.2d 590, 592 (1957); and *Heller & Henretig, Inc. v. 3620–168th Street, Inc.,* 302 N.Y. 326, 98 N.E.2d 458, 459 (1951)). It is a well established rule of contract interpretation that words are to be given their plain and normal meaning. *Brooke Group Ltd. v. JCH Syndicate 488,* 87 N.Y.2d 530, 640 N.Y.S.2d 479, 663 N.E.2d 635, 638 (1996). "[T]he aim is a practical interpretation of the expressions of the parties to the end that there be a realization of [their] reasonable expectations." *Sutton v. East River Savings Bank,* 55 N.Y.2d 550, 450 N.Y.S.2d 460, 435 N.E.2d 1075, 1078 (1982) (internal quotations omitted). Accordingly, the court must consider "not merely literal language, but whatever may be reasonably implied therefrom must be taken into account," *id.,* and will construe business terms as a reasonable person who is cognizant of the customs and practices of that business. *Alexander & Alexander Services, Inc. v. These Certain Underwriters at Lloyd's London,* 136 F.3d 82, 86 (2d Cir.1998).

Under New York law, however, where "the terms of a contract could suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business,'" an ambiguity exists. *Alexander, supra,* at 86 (quoting *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 906 (2d Cir.1997)). In other words, where reasonable minds, familiar with particular customs and usages, could differ on what a term means, a contract is ambiguous on its face. *Van Wagner Advertising Corp. v. S & M Enterprises,* 67 N.Y.2d 186, 501 N.Y.S.2d 628, 492 N.E.2d 756, 758–59 (1986). Whether a contract is ambiguous is a matter of law for the court to decide and parol evidence is not admis-

sible to create an ambiguity. *W.W.W. Associates, Inc. v. Giancontieri,* 77 N.Y.2d 157, 566 N.E.2d 639, 640, 565 N.Y.S.2d 440 (1990). If "consideration of a contract as a whole resolves the ambiguity created by one clause, there is no occasion to consider extrinsic evidence of the parties' intent." *Hudson–Port Ewen Associates, L.P. v. Kuo,* 78 N.Y.2d 944, 573 N.Y.S.2d 637, 578 N.E.2d 435, 435 (1991).[4] Nevertheless, an interpretation giving reasonable and effective meaning to all the terms of a contract is preferable to one which leaves a part unreasonable or of no effect. *Rothenberg, supra,* at 1019 (citing *Corhill Corp. v. S.D. Plants, Inc.,* 9 N.Y.2d 595, 217 N.Y.S.2d 1, 176 N.E.2d 37, 39 (1961), and *Rentways, Inc. v. O'Neill Milk and Cream Co.,* 308 N.Y. 342, 126 N.E.2d 271, 273 (1955)); *see Rodolitz v. Neptune Paper Products, Inc.,* 22 N.Y.2d 383, 292 N.Y.S.2d 878, 239 N.E.2d 628, 631 (1968) (holding a contract should be interpreted so as to be given, to the maximum degree possible, full meaning and effect to all of its terms as to achieve the intent of the parties). Further, in construing the intent of parties to a contract, courts endeavor to give effect to each material term of the agreement.

In the instant case, the entire contract at issue consists of the Agreement, and the addenda dated May 17, 1993, February 21, 1995 and July 6, 1995, as those are the only documents whose mutual approval is indicated by a signature of both parties. The parties do not dispute that the con-

tract is unambiguous and fully integrated. Defendant's Memorandum at 5; Plaintiff's Memorandum at 9. As such, neither party seeks to invoke the parol evidence rule. The parties also agree that the Agreement does not expressly require WIBC to pay for all the rooms within the room block. Defendant's Memorandum at 1; Plaintiff's Memorandum in Opposition at 2. Rather, their dispute turns on whether the Agreement's requirement that Hyatt "hold" a block of rooms for WIBC, absent any attrition or "cut-off" clause,[5] obligated, by implication, WIBC to pay for the entire block of rooms regardless of whether any of the rooms were in fact occupied. Defendant's Memorandum at 8–12; Plaintiff's Memorandum at 9–10. Accordingly, the court examines both of Hyatt's causes of action to determine if reasonable minds could differ as to whether it is implicit from the Agreement that WIBC was required to pay for all the rooms held in the room block.

## A. *Breach of Contract*

In its first cause of action, Hyatt alleges that the Agreement implies WIBC was required to pay for all the rooms held in the room block, regardless of whether the rooms were used, and that WIBC breached its contract by failing to use all 4735 rooms held by Hyatt pursuant to the Agreement. Complaint, ¶ 15. WIBC maintains that nothing within the four corners of the Agreement or its addenda may

4. The court notes that the parties have submitted extrinsic evidence which they urge the court consider in the event that the contract is found ambiguous. However, an ambiguous contract accompanied by extrinsic evidence thus presents a triable issue of fact which generally renders summary judgment improper *Rothenberg, supra,* at 1019 (citing *Heyman v. Commerce & Industry Insurance Co.,* 524 F.2d 1317, 1320 (2d Cir.1975) (internal quotation omitted)). Thus, although ambiguity is generally construed against the drafter, *Jacobson v. Sassower,* 66 N.Y.2d 991, 499 N.Y.S.2d 381, 489 N.E.2d 1283, 1284 (1985), the existence of and reliance upon relevant extrinsic evidence of the party's actual intent will preclude summary judgment. *Mellon Bank, N.A. v. United Bank Corp. of New York,* 31 F.3d 113, 116 (2d Cir.1994). Accordingly, as it finds no ambiguity, the court will construe the Agreement's intent without considering any of the extrinsic evidence submitted.

5. According to Hyatt, a "cut-off" clause permits rooms held in a block for use by a specified group to be returned to the hotel's inventory and made available for sale to others who are not members of the group for which the block of rooms is held. Plaintiff's Memorandum at 5 n. 2. Hyatt further maintains that although the initial draft of the Agreement contained a cut-off clause, WIBC's version, which became the final version, did not. *Id.*

be reasonably construed as requiring it to pay for all the rooms which Hyatt agreed to hold.

The court finds, based upon a plain reading of the Agreement, a valid contract exists, but that the obligations under the Agreement which were supported by consideration do not include a promise by WIBC to pay for all the rooms held by Hyatt, regardless or whether such rooms were occupied by a Convention attendee. In particular, a construction of the Agreement in accordance with the plain meaning of the terms contained therein, reveals that under the Agreement, the only promises supported by consideration are Hyatt's promise to hold a block of rooms for possible use by WIBC Convention attendees and tournament participants in return for WIBC's promise to take reasonable efforts in good faith to make other necessary arrangements to hold the 1996 WIBC Convention in Buffalo.

 Consideration is a fundamental requisite to the existence of a valid contract. *Weiner v. McGraw–Hill*, 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441, 444 (1982)). A "basic contemporary definition" of consideration "would include the idea that it consists of either a benefit to the promisor or a detriment to the promisee." *Weiner, supra* (citing *Holt v. Feigenbaum*, 52 N.Y.2d 291, 437 N.Y.S.2d 654, 419 N.E.2d 332, 336 (1981).) "It is enough that something is promised, done, forborne or suffered by the party to whom the promise is made as consideration for the promise made to him." *Weiner, supra*, (quoting *Hamer v. Sidway*, 124 N.Y. 538, 27 N.E. 256, 257 (1891)). A promise by one party is consideration that will support a promise by another party. 22 N.Y.Jur.2d, Contracts § 13, at 40 (citing *Barbour v. Equitable Life Assurance Society*, 225 N.Y. 675, 122 N.E. 876 (1919)).

 It is well-settled that under New York law, implied promises in commercial agreements are enforceable. *Dalton v. Educational Testing Service*, 87 N.Y.2d 384, 639 N.Y.S.2d 977, 663 N.E.2d 289, 291 (1995) (implied obligation of good faith includes promises a "reasonable person in the position of the promisee would be justified in understanding were included") (internal citations omitted); *Wood v. Lucy, Lady Duff–Gordon*, 222 N.Y. 88, 118 N.E. 214 (1917) (finding implied promise to perform as consideration for enforceable contract) ("A promise may be lacking, and yet the whole writing may be 'instinct with an obligation,' imperfectly expressed.") (citing cases). However, no obligation may be implied that "would be inconsistent with other terms of the contractual relationship." *Dalton, supra*, at 292 (quoting *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86, 91 (1983).) Moreover, in construing a contract, courts should not "suppose that one party was to be placed at the mercy of the other." *Wood, supra*, at 214 (citing cases).

 Here, by agreeing to hold the block of rooms for use by WIBC at reduced rates, three years in advance, Hyatt assumed the risk of loss of other business should its services be sought in connection with another group seeking to hold a convention in Buffalo during the same time period as the proposed 1996 WIBC Convention. WIBC impliedly agreed to use its best efforts to make the other arrangements necessary to hold the 1996 WIBC Convention in Buffalo, such as procuring available bowling venues, banquet facilities, and meeting rooms. A reasonable person would understand that both Hyatt and WIBC would mutually benefit from this exchange of promises. As the headquarters hotel for the Convention, Hyatt would financially benefit from ancillary business such as room service from rooms actually occupied out of the block of rooms held and revenue earned from meetings and banquets held at the hotel in connection with the Convention. In turn, WIBC had an essential commitment in place enabling it to persuade area bowling venues and the Buffalo Convention Center to

make their facilities available for use in connection with the bowling tournament as well as to allow anticipated Tournament participants and Convention attendees ample time to make arrangements to attend. Agreement, at 5; Defendant's Response in Opposition at 6. Nor did the Agreement place Hyatt at the mercy of WIBC for if the Hyatt Regency held the WIBC rooms in accordance with the Agreement, and WIBC unreasonably failed to use its best efforts to make all the arrangements necessary for the Convention to take place, WIBC could have been cast in potential damages for Hyatt's lost revenue. *Wood, supra*, at 214. On this basis, the court finds the Agreement was a valid contract.

Although the Agreement is a valid contract insofar as it is based on Hyatt's express promise to make the specific block of rooms available for use by attendees of the 1996 WIBC Convention in return for WIBC's implied promise to use good faith efforts to complete necessary arrangements to hold such convention in Buffalo, nothing within the Agreement or its addenda support Hyatt's further contention that WIBC also impliedly promised to be financially responsible for the rooms. Despite the proffer of parol evidence, including evidence by one expert, the parties have not argued such evidence is necessary to interpret any specific term of the contract. The court thus finds the terms do not require expert opinion or parol evidence for their interpretation. That the contract does not include an implied promise by WIBC to pay for all the rooms held, regardless of whether they were occupied, is supported by a plain reading of the contract and its addenda, including the terms "hold," "estimate," "picked up," and "reservation," taken individually and in conjunction with the Agreement as a whole.

Hyatt claims that paragraph 1 of the Agreement implies WIBC intended to "reserve and hold a specified number of rooms for use by Defendant and its members." Plaintiff's Memorandum in Opposition at 2. Accordingly, Hyatt urges the court to interpret the word "hold" as synonymous with the word "reserve," Plaintiff's Memorandum at 5, thus construing the language in paragraph 1 of the Agreement which refers to the block of rooms to be "held" as constituting guaranteed reservations.

Hyatt's reliance on paragraph 1 as a promise by WIBC to pay for all the rooms held in the room block is, however, unreasonable as the court finds nothing within the plain meaning of paragraph 1 can be interpreted as implying WIBC intended to pay for the entire block of rooms held by Hyatt. Specifically, the verb "estimate" in the sentence "[f]rom past experience, we estimate the following number of rooms will be picked up from your block as headquarters hotel" denotes that the number of rooms to be held in the room block was not intended as a firm commitment that all rooms held would be necessary to accommodate all Convention attendees who chose to stay at Hyatt.[6] The term "picked up" also demonstrates some further action was needed before any of the rooms held in the room block could actually be occupied by a Convention attendee.

Hyatt also contends that the February 21, 1995 Addendum which increased the room block by 25 additional rooms implies WIBC intended that the original "estimate" of the number of rooms to be picked up was to be replaced by a "firm" number. Plaintiff's Memorandum in Opposition at 7. A plain reading of that addendum, however, indicates only that the number of rooms to be held in the room block was increased and is silent as to whether the increased numbers are any more "firm"

6. The dictionary defines "estimate," as used in this sentence, as "a judgment made from usual mathematical calculations especially from incomplete data: a rough or approxi- mate calculation (as of the number, amount, or size of anything)." Webster's Third New International Dictionary 779 (1986).

than the previously estimated number of rooms to be "picked up."

Further, the proposed Addendum from February 20, 1995, containing the statement that the room block held had been increased based on a telephone conversation in which assurances were made· to Hyatt that WIBC "will be able to completely fill [its] room commitment at the headquarter hotel, Hyatt Regency Buffalo," was never signed by WIBC. As such, it was never made part of the Agreement and is of no effect. Indeed, the effort by Hyatt to add language of a more obligatory nature and WIBC's implicit rejection of it tends to undermine Hyatt's contention that paragraph 1 of the Agreement created the explicit obligation it seeks to impose on WIBC. If the unamended language of paragraph 1 in fact created the agreement, placing the risk of non-attendance upon WIBC, as Hyatt now asserts, Hyatt's February 20th proposal was unnecessary.

Based on the plain and normal meanings of the terms used in paragraphs 1 and 2, the court finds that the transaction of reserving a room was independent from WIBC's request to Hyatt, as stated in the Agreement, placing rooms on hold. Specifically, paragraph 2 of the Agreement, entitled "Reservations," spells out the further steps necessary before a room held pursuant to the terms set forth under paragraph 1 is actually reserved. Agreement, ¶ 2. Convention delegates and bowlers were required to use WIBC's in-house travel agency for the processing of hotel reservations. *Id.* Reservations for WIBC's VIPs, Board of Directors and staff would be handled directly by WIBC and Hyatt. *Id.* These provisions are susceptible of only one reasonable interpretation, *i.e.,* that no room within the room block held by Hyatt for WIBC would be considered reserved absent additional action by a bowler or · delegate apart from Hyatt's holding of the WIBC room block from which such reservations were expected to be made. Further, an interpretation of the Agreement that the hold placed on the

room block was intended as a reservation for that entire block of rooms would render meaningless the need for Convention attendees to make subsequent reservations through the WIBC travel agency, with Hyatt. There is, significantly, no language in the Agreement to suggest that WIBC was to collect the costs of attendees' rooms and remit the amounts required to Hyatt.

Hyatt's argument that the sentence in paragraph 2, in which WIBC stated that it was not advisable to "overbook" in anticipation of "the usual 10 percent 'no shows' " as if one member of a bowling team was unable to participate in the tournament a substitute was generally found, implies that all the rooms held in the room block would be used · and paid for by WIBC is also without merit. That observation expressly pertains only to *bowlers,* and not to the other anticipated Convention attendees including delegates, WIBC VIPs, Board of Directors or staff. As such, the statement is more reasonably interpreted as advising Hyatt that while other Convention attendees who reserve rooms out of the room block may not show up in accordance with such reservation, any reservation of a blocked room placed on behalf of a member of a bowling team is not likely to go unused. While this sentence thus warns Hyatt not to overbook rooms *reserved* by the bowlers, nothing in paragraph 2 can be reasonably construed as advising against overbooking any of the rooms reserved by other attendees. In fact, by expressly suggesting Hyatt not overbook rooms reserved by bowlers, the Agreement implies that it would not be unreasonable to overbook to some extent rooms reserved by other Convention attendees. Further, WIBC's admonition does not preclude the possibility that an entire team may, because of unforeseen reasons, nevertheless decide not to attend the Convention. As noted, Hyatt was aware that WIBC could not control the actual extent of attendance at the Convention. Reliance on that sentence as a guarantee that all the rooms

held in the room block would be used is, therefore, unreasonable.

Finally, the liquidated damages clause contained in the Agreement provides for WIBC to pay Hyatt a sum far less than what Hyatt claims it is owed based on WIBC's failure to fill all the rooms held. Complaint, at 5. Specifically, that clause provides that if the Convention is canceled after obtaining all other commitments on which the Agreement was expressly contingent and the WIBC annual meeting dates, WIBC will remit to Hyatt damages "equal to one night's anticipated room revenue based on the single occupancy rate and the number of rooms held on the peak night of arrival." Complaint, at 5. Multiplying the single room occupancy rate of $70 per day, Agreement, ¶ 5, by 325, the number of rooms to be held on the peak night of arrival, Agreement, ¶ 1, the total liquidated damages due Hyatt in the event the Convention was canceled was $22,750. It is significant that the Agreement provides no deadline by which notification of the Convention's cancellation was to be received, implying that the Convention could be canceled at any time and WIBC would be liable for no more than $22,750.

In contrast, Hyatt seeks to recover by the instant action in excess of $172,900. In particular, Hyatt claims that only 2,265 rooms out of the 4,735 rooms held in the room block were used, Complaint, ¶ 22, resulting in 2,470 unused rooms. Multiplying the number of rooms allegedly unused, 2,470, by the single occupancy rate of $70 per day, yields $172,900. The fact that some of the purported unused rooms were to be billed at the rate of $89 per day implies that the damages Hyatt seeks are actually higher.

Thus, under Hyatt's theory, WIBC risked being held responsible for substantially more in damages for failing to fill some rooms in the room block than if the Convention were entirely canceled at the last minute. It makes no economic sense that WIBC would expose itself to substantially more damages based on the failure of individual participants, over whom the WIBC had no control, to choose the Hyatt Regency Buffalo as their hotel, than it expressly agreed to assume if non-attendance by prospective participants unexpectedly forced cancellation of the entire Convention.

As such, a plain reading of the Agreement demonstrates that it is not ambiguous and that it did not either expressly or impliedly obligate WIBC to pay for all the rooms Hyatt held in the block, regardless of whether those rooms were actually occupied by a Convention attendee. Hyatt could have insisted on a provision limiting its potential loss in the event of low WIBC room occupancy. However, while accepting the benefit of its designation as the Convention headquarters, Hyatt failed to do so. The risk of low attendance and occupancy less than the WIBC estimate, therefore, rightfully falls upon Hyatt. Summary judgment dismissing the first cause of action is, therefore, GRANTED.

### B. *Promissory Estoppel*

For its second cause of action, Hyatt alleges that it reasonably relied to its detriment on WIBC's promise to use all 4,735 rooms Hyatt held under the Agreement for the duration of the Convention. Complaint, ¶ 18. Hyatt maintains that under the Agreement and the addenda, it was reasonably expected that WIBC would use and pay for 4,735 rooms and WIBC's use of only 2,265 rooms caused Hyatt to suffer damages. Complaint, ¶¶ 21–23. In other words, as WIBC used only 2,265 of the rooms held, Hyatt claims it has suffered damages equal to revenue lost based on 2,470 unused rooms held, but not used.

■■■ The doctrine of 'promissory estoppel' is to avoid the harsh results of allowing the promisor in such a case to repudiate, when the promisee has acted in reliance upon the promise. *Siegel v. Spear & Co.*, 234 N.Y. 479, 138 N.E. 414, 416 (1923). As such, promissory estoppel may substitute for consideration, other-

wise lacking, thus creating a binding contract. 22 N.Y.Jur.2d, Contracts § 68, p. 97; *Allegheny College v. National Chautauqua County Bank*, 246 N.Y. 369, 159 N.E. 173, 174–75 (1927). A cause of action sounding in promissory estoppel requires " '(1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the party to whom the promise is made, and (3) an injury sustained in reliance on the promise.' " *Gurreri v. Associates Insurance Co.*, 248 A.D.2d 356, 669 N.Y.S.2d 629, 631 (2d Dept.1998) (quoting *Rogers v. Town of Islip*, 230 A.D.2d 727, 646 N.Y.S.2d 158, 158 (2d Dept.1996)). However, if the record fails to establish any of these three elements, summary judgment dismissing the second cause of action may be granted. *Sanyo Electric, Inc. v. Pinros & Gar Corp.*, 174 A.D.2d 452, 571 N.Y.S.2d 237, 238 (1st Dept.1991) (dismissing on summary judgment defendant's counterclaim alleging promissory estoppel for failure to demonstrate either a clear and unambiguous promise or reasonable reliance thereon).

■ Here, summary judgment dismissing Hyatt's claim based on promissory estoppel will be granted as the record establishes that Hyatt's reliance on WIBC's alleged promise was unreasonable. First, as discussed, Discussion, *supra*, at 97–98, Hyatt's assertion that it was intended that the word "hold" as used in the Agreement be interpreted synonymously with the word "reserve" is without merit. Nor was it reasonable for Hyatt to rely on the number of rooms which WIBC "estimated" would be "picked up" from the room block as a firm commitment that all the rooms held would actually be occupied by a Convention attendee. Discussion, *supra*, at 98

Further, reading paragraph 1 in conjunction with paragraph 2 as required, *Rodolitz, supra*, at 631, the Agreement is reasonably interpreted as allowing Hyatt to engage in what is known as "blind cutting" the block of rooms held. According to WIBC, "blind cutting" refers to the process by which a hotel will sell rooms out of a block of rooms held under an agreement with an organization like WIBC, without informing the group for which the rooms were held. Defendant's Memorandum at 14. WIBC maintains that Hyatt did "blind-cut" and in fact resold 449 rooms out of WIBC's room block. *Id.* In contrast, although Hyatt admits that during the Convention it resold 449 rooms out of the room block, Hyatt maintains that it did not engage in blind cutting but, rather, resold those rooms in an attempt to mitigate damages. Plaintiff's Memorandum in Opposition at 8.

Regardless of whether Hyatt's admitted resale of the 449 rooms from the WIBC block constitutes an attempt to blind cut or to mitigate damages, Hyatt does not dispute that blind cutting is a common practice in the hotel business and was employed in this case. The court thus finds that a reasonable person cognizant of common practices in the hotel business would be aware of the blind cutting practice and would interpret the Agreement as not forbidding Hyatt from engaging in that practice. That Hyatt has never contended it would be liable in the event a Convention attendee was unable to reserve rooms within the block Hyatt held for WIBC supports this finding.

This finding is consistent with two facts fairly established in the record. First, it is undisputed that Hyatt attempted, unsuccessfully, to amend the Agreement so as to shift the potential for lost revenue from under attendance to WIBC. Second, evidence reasonably supports a finding that Hyatt rented a substantial number of rooms from the WIBC block which it claims it was obligated to hold exclusively for WIBC attendees.

Thus, Hyatt's effort to thrust WIBC into the role of guarantor such that it was financially responsible for all rooms in the block is at variance to the facts. Accordingly, the court finds Hyatt's reliance on the Agreement as creating WIBC's promise to pay for unused rooms was unreasonable. As such, Hyatt has failed to demonstrate reasonable reliance on an un-

ambiguous promise to its detriment and it's second cause of action based on promissory estoppel fails and summary judgment on that ground is GRANTED.

### 4. *Partial Summary Judgment*

WIBC also moved in the alternative for partial summary judgment requesting that in the event its earlier motion for summary judgment is not granted, its liability for damages should be limited. According to WIBC, Hyatt does not own the Buffalo Hyatt Regency Hotel, rather, it manages and operates the hotel pursuant to a management agreement with West Genesee, the hotel owner. Defendant's Memorandum of Law Supporting Motion for Partial Summary Judgment filed January 29, 1999 (Docket Item No. 34) at 3. In exchange for its services, Hyatt receives a fee from West Genesee. *Id.* According to WIBC, Hyatt represents only its own interests in this action and, as such, any damages awarded should be limited to an amount equal to the fee Hyatt would have received as a fee for its services pursuant to the management agreement in place between Hyatt and West Genesee if all the rooms in the WIBC block were sold. *Id.* at 4–5.

WIBC's motion for partial summary judgment concerns only the issue of damages. However, by granting WIBC's motion for summary judgment on the merits of Hyatt's claims, WIBC has been found not liable for any damages. Accordingly, WIBC's motion for partial summary judgment is DISMISSED as moot.

### CONCLUSION

Based on the foregoing, Defendant's motion for summary judgment (Docket Item No. 26) is GRANTED and for partial summary judgment (Docket Item No. 33) is DISMISSED as moot, and Plaintiff's motion for summary judgment (Docket Item No. 28) is DENIED.

SO ORDERED.